121 T.C. No. 10

UNITED STATES TAX COURT

EMMANUEL L. ROCO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8470-01.                    Filed September 11, 2003.


        Petitioner (P) sued the New York University
Medical Center (NYUMC) in a qui tam action under the
False Claims Act, 31 U.S.C. secs. 3729-3733 (2000).
NYUMC agreed to pay $15,500,000 to the United States to
settle the case.  The United States paid $1,568,087 of
the settlement proceeds to P in 1997.

        The parties dispute whether the $1,568,087 qui tam
payment is includable in P's gross income for 1997.

        <u>Held</u>: The $1,568,087 payment is includable in P's
gross income for 1997.

        <u>Held</u>, <u>further</u>, P is liable for the accuracy-
related penalty under sec. 6662(a), I.R.C., for 1997.

Emmanuel L. Roco, pro se.

Patricia A. Riegger, for respondent.

COLVIN, Judge:  Respondent determined a deficiency in petitioner's 1997 Federal income tax of $610,446 and an accuracy-related penalty under section 6662(a) of $122,093.

Petitioner sued the New York University Medical Center (NYUMC) in a qui tam[1] action under the False Claims Act (FCA), 31 U.S.C. secs. 3729-3733 (2000).  In the qui tam action, petitioner claimed that NYUMC had submitted false information to the United States which resulted in a substantial overpayment of Federal funds to NYUMC.  NYUMC agreed to pay $15,500,000 to the United States in settlement of the case.  The United States paid petitioner $1,568,087 in 1997 as his share of the settlement proceeds.

The issues for decision are:

1.  Whether the $1,568,087 payment that petitioner received from the United States in 1997 is includable in gross income.  We hold that it is.

2.  Whether petitioner is liable for the accuracy-related penalty under section 6662(a) for 1997.  We hold that he is.

----

[1]  Qui tam is short for the Latin phrase "qui tam pro domino rege quam pro se ipso in hac parte sequitur", which means "who pursues this action on our Lord the King's behalf as well as his own."  Vt. Agency of Natural Resources v. United States, 529 U.S. 765, 768 n.1 (2000).

Unless otherwise specified, section references are to the Internal Revenue Code as amended.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  Petitioner and His Spouse

Petitioner resided in Merrick, New York, when he filed the petition in this case.

Petitioner and his wife, Milagros Roco (Mrs. Roco), have been married since January 24, 1971.  Both petitioner and Mrs. Roco are accountants and have accounting degrees from the University of the East, Manila, the Philippines.  Petitioner was employed as an accountant by NYUMC in New York, New York, from 1974 to 1992.  Mrs. Roco has worked as an income tax auditor for the State of New York Department of Taxation and Finance since 1977.  She began training others to do tax audits in 1988.

B.  Qui Tam Actions

Congress enacted the FCA in 1863.  Act of Mar. 2, 1863, ch. 67, 12 Stat. 696.  Under the FCA, either the United States or a private person (the relator) may bring an action, known as a qui tam action, against any person who knowingly presents to the Government a false or fraudulent claim for payment.  31 U.S.C. secs. 3729(a) and 3730(b)(1).  The relator in a qui tam action is the agent of the United States, in whose name the suit is brought.  31 U.S.C. sec. 3730(b); Vt. Agency of Natural Resources v. United States, 529 U.S. 765, 772 (2000).  The relator may

recover attorney's fees and a share of the Government's recovery if the claim is successful.  31 U.S.C. sec. 3730(d)(1) and (2).

C.   Petitioner's Lawsuit Against NYUMC

Petitioner was fired by NYUMC in 1992 after he told his superiors that he believed NYUMC had substantially overcharged the United States.  In 1993, petitioner, acting as the relator, filed a qui tam action against NYUMC in the U.S. District Court for the Southern District of New York.  In that case, petitioner alleged that, from 1984 to 1993, NYUMC submitted false information and overcharged the United States for costs associated with federally sponsored research grants and Medicaid, Medicare, and Blue Cross/Blue Shield reimbursements.  Petitioner researched the law concerning qui tam actions, drafted the complaint, and appeared pro se in the qui tam proceeding.

The U.S. Attorney for the Southern District of New York intervened in the case.  The case was settled in April 1997.  Under the settlement, NYUMC agreed to pay the United States $15,500,000, and the United States paid petitioner $1,568,087 on May 13, 1997.  Petitioner, NYUMC, and the United States stipulated:

> The United States agrees to pay the Relator pursuant to 31 U.S.C. section 3730(d)(1), $1,568,087 within a reasonable time following receipt of the full settlement amount from defendant as described in paragraph 2. * * *  This Stipulation does not in any manner affect any Claims the United States has or may have against the Relator arising under title 26 of the United States Code ("Internal Revenue Code") and the

regulations promulgated thereunder, or from any obligations created by this Stipulation.

Petitioner asked Deborah Pugh (Pugh), the Department of Justice attorney who handled the qui tam case, whether the qui tam payment was includable in gross income for Federal income tax purposes. She told him she did not know and recommended that he consult an attorney. Petitioner asked Pugh to omit the paragraph quoted above, but she declined to do so. The Department of Justice issued to petitioner a Form 1099-MISC, Miscellaneous Income, showing that it had paid him $1,568,087 in 1997.

D.   Petitioner's Efforts To Determine the Tax Treatment of the Qui Tam Payment

Petitioner and Mrs. Roco believed that their accounting and tax backgrounds were sufficient to enable them to correctly determine whether the qui tam payment was includable in gross income for Federal income tax purposes. Petitioner and Mrs. Roco researched tax cases, the Internal Revenue Code, Internal Revenue Service (IRS) regulations, tax publications, and tax treatises. Petitioner and Mrs. Roco correctly concluded that none of those authorities discuss whether payments to a relator in a qui tam case are includable in the relator's gross income. Mrs. Roco told petitioner that she thought the qui tam payment was probably not includable in gross income.

After he received the Form 1099-MISC, petitioner requested a private letter ruling from the IRS on July 23, 1997, as to the

income tax consequences of the qui tam payment he received. Petitioner's request was assigned to Sheldon Iskow (Iskow). In August 1997, Iskow told petitioner that there were no court cases holding that qui tam payments are includable in gross income. Iskow also told petitioner that he believed a qui tam payment is taxable because it is analogous to a reward, and that the IRS would rule that the qui tam payment was taxable unless petitioner provided legal authorities for his position or withdrew his request for a ruling. Petitioner withdrew the letter ruling request.

E.   Petitioner's 1997 Tax Returns

Petitioner made no estimated tax payments to the United States in 1997 relating to the qui tam payment, but he did make an estimated tax payment of $80,500 to the State of New York. Mrs. Roco helped petitioner prepare and file his Form 1040, Individual Income Tax Return, for 1997. Petitioner did not report the qui tam payment on his State and Federal returns for 1997.

Petitioner and Mrs. Roco filed joint Federal returns for 1995, 1996, 1998, 2000, and 2001, but they filed separate returns for 1997. They expected respondent to discover that petitioner had not reported the $1,568,087 payment by matching the Form 1099-MISC with his 1997 return, and that respondent would decide to audit petitioner's 1997 return. Mrs. Roco believed she might

lose her job if she owed substantial tax for failing to report the qui tam payment.

The IRS began the examination of petitioner's 1997 income tax return in 1999.

OPINION

A.  Whether the $1,568,087 Qui Tam Payment Is Includable in Income

We first decide whether the $1,568,087 payment made by the United States to petitioner in the qui tam action is includable in petitioner's gross income.

The qui tam payment to petitioner was the equivalent of a reward for petitioner's efforts to obtain repayment to the United States of overcharges by NYUMC.  Rewards are generally includable in gross income.  Sec. 1.61-2(a), Income Tax Regs.

Petitioner contends that, if qui tam payments are includable in gross income, taxpayers will be discouraged from bringing actions under the FCA.  We disagree that this possibility justifies holding for petitioner.  Petitioner's point could also be made with respect to taxing any reward, but rewards are clearly includable in gross income under section 1.61-2(a)(1), Income Tax Regs.

Petitioner contends that the $1,568,087 qui tam payment is not includable in gross income because it is not gain derived from capital or labor.  See Eisner v. Macomber, 252 U.S. 189, 207

(1920).[2]  We disagree.  Gross income includes all income from whatever source derived unless excluded by law.  Sec. 61; Commissioner v. Kowalski, 434 U.S. 77, 82-83 (1977); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955).  The Internal Revenue Code provides no exclusion from gross income for proceeds received by a relator in a qui tam proceeding.  In Eisner v. Macomber, supra, the Supreme Court decided that a shareholder-taxpayer did not realize gain on the receipt of a stock dividend.  The Supreme Court said that income is "'gain derived from capital, from labor, or from both combined,'" id. at 207 (quoting Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185 (1918)), but it does not include "enrichment through increase in value of capital investment", id. at 214-215.

Neither qui tam payments nor punitive damages are intended to compensate the recipient for actual damages.  Punitive damages are includable in gross income.  O'Gilvie v. United States, 519 U.S. 79, 90 (1996); Commissioner v. Glenshaw Glass Co., supra.  In Commissioner v. Glenshaw Glass Co., supra at 430-431, the Supreme Court said that gross income includes all accessions to wealth and that the definition of income in Eisner v. Macomber, supra, "was not meant to provide a touchstone to all future gross

---

[2]  At trial petitioner suggested that a qui tam payment is a nontaxable share in the recovery of a reimbursement.  However, we do not consider this theory because petitioner did not explain or argue it on brief.

income questions." Commissioner v. Glenshaw Glass Co., supra at 431. The payment to a relator in a qui tam action is not a penalty imposed on the wrongdoer; instead, it is a financial incentive for a private person to provide information and prosecute claims relating to fraudulent activity. United States ex rel. Semtner v. Medical Consultants, Inc., 170 F.R.D. 490, 495 (W.D. Okla. 1997); Biddle & Matricciani, "Whistleblower Lawsuits--Health Care Billing Fraud Cases," 36 Md. B.J. 3 (Jan/Feb. 2003); Cavanaugh, "False Claims Act: Failure To Seek Legal Advice Not a Violation of the FCA," 30 J.L. Med. & Ethics 318 (Summer 2002).

We conclude that the $1,568,087 qui tam payment that petitioner received in 1997 is includable in gross income.

B.   Whether Petitioner Is Liable for the Accuracy-Related Penalty Under Section 6662(a)

1.   Burden of Production

Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment attributable to any substantial understatement of income tax. Sec. 6662(a) and (b)(2). An understatement is reduced to the extent that it is (1) based on substantial authority or (2) adequately disclosed on the return or in a statement attached to the return and there is a reasonable basis for the tax treatment of that item. Sec. 6662(d)(2)(B)(ii); sec. 1.6662-3(c), Income Tax Regs. A taxpayer may be relieved of liability for the accuracy-related penalty if the taxpayer shows that he or she had reasonable cause for the

understatement and acted in good faith.  Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.

Respondent bears the burden of production with respect to petitioner's liability for the accuracy-related penalty under section 6662(c) because the examination in this case commenced after July 22, 1998, the effective date of section 7491. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.  Petitioner erroneously failed to include in his gross income the $1,568,087 qui tam payment.  Thus, respondent has met the burden of production.  H. Conf. Rept. 105-599, at 241 (1998), 1998-3 C.B. 747, 995.

2.  <u>Petitioner's Contentions</u>

Petitioner contends that he made a good faith and reasonable effort to assess his proper tax liability by discussing it with Mrs. Roco and researching tax cases, the Internal Revenue Code, IRS regulations, tax publications, and tax treatises to determine whether the qui tam payment was includable in gross income for Federal income tax purposes.  He also contends that his failure to report the qui tam payment on his 1997 return was reasonable because he expected respondent to audit his 1997 return after respondent matched the Form 1099-MISC with his return and discovered that he had not reported the $1,568,087 payment.  We disagree.

Petitioner received a Form 1099-MISC for the qui tam payment and expected respondent to audit his return. Triggering an audit by omitting income reported on a Form 1099 is not a good faith attempt to comply with the tax laws. Petitioner's claim that he was merely seeking to test the income tax laws is not credible because he failed to disclose the payment on his return.

Petitioner contends that the language in Eisner v. Macomber, supra, to the effect that income includes only proceeds from labor or capital, provides substantial authority for his position that the qui tam payment was not includable in gross income. We disagree. A taxpayer has substantial authority for his or her position if the weight of authority in support of the taxpayer's position is substantial in relation to the weight of authorities supporting contrary positions. Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990). The description of income in Eisner v. Macomber, 252 U.S. 189 (1920), clearly is inapplicable here. See, e.g., Commissioner v. Glenshaw Glass Co., 348 U.S. at 431; Helvering v. Bruun, 309 U.S. 461 (1940); United States v. Kirby Lumber Co., 284 U.S. 1 (1931). The Supreme Court has limited Eisner v. Macomber, supra, chiefly to the taxability of stock dividends. See Helvering v. Griffiths, 318 U.S. 371, 373, 375, 394 (1943). We conclude that Eisner v. Macomber, supra, is not substantial authority for petitioner's position here.

Petitioner's withdrawal of his request for a letter ruling upon learning that it would be adverse does not suggest he exercised good faith. The bona fides of his claim of reliance on Mrs. Roco, who held (and holds) a responsible tax law enforcement position with New York State, is undermined by the fact that she did not act consistently with what she told him; i.e., she filed separately for 1997, unlike their practice for prior years.

We conclude that petitioner did not act in good faith in claiming that the 1997 qui tam payment was nontaxable, and that he is liable for the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.