## ALBERT D. CAMPBELL, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21209–07.          Filed January 21, 2010.

P included on his return as "Other income" $5.25 million of an $8.75 million "qui tam" payment P was awarded pursuant to a Federal False Claims Act action. He did not report the remaining $3.5 million, which was subtracted from the recovery by P's attorneys as attorney's fees. P then omitted the $5.25 million net proceeds of the qui tam payment from the taxable income of $793 he reported on his return. P disclosed the $3.5 million attorney's fee payment on Form 8275, Disclosure Statement, attached to his return. P contends that none of the $8.75 million qui tam payment is includable in his gross income because it was a nontaxable share of the U.S. Government's recovery. R contends that the entire qui tam payment, including the portion paid to P's attorneys as their fee, is includable in P's gross income. *Held*: The entire $8.75 million qui tam payment awarded to P is includable in P's gross income. *Roco v. Commissioner*, 121 T.C. 160 (2003), followed. *Held, further*, P substantiated the payment of the attorney's fees in issue. *Held, further*, P is entitled to deduct the attorney's fees as a miscellaneous itemized deduction. *Held, further*, P is subject to an accuracy-related penalty pursuant to sec. 6662, I.R.C., because P's exclusion of the $8.75 million qui tam payment from his gross income resulted in a substantial understatement of income tax. *Held, further*, so much of P's understatement as relates to his failure to include in gross income the $3.5 million attorney's fee payment is reduced for purposes of the accuracy-related penalty, pursuant to sec. 6662(d)(2)(B), I.R.C., since P adequately disclosed his position on Form 8275 and had a reasonable basis for that position. *Held, further*, P is not entitled to further reduction of the accuracy-related penalty, as relates to the $5.25 million net proceeds of the qui tam payment, since, pursuant to sec. 6662(d)(2)(B), I.R.C., P did not have substantial authority or make an adequate disclosure or have a reasonable basis for his position, and pursuant to sec. 6664(c),

20

> I.R.C., P did not have reasonable cause for his position or act in good faith.

*Bradley J. Davis* and *Loan B. Kennedy*, for petitioner.
*Miriam C. Dillard*, for respondent.

WELLS, *Judge*: Respondent determined a deficiency in petitioner's Federal income tax for taxable year 2003 of $3,044,000, an accuracy-related penalty pursuant to section 6662(a) of $608,800, and a delinquency addition to tax pursuant to section 6651(a)(1) of $151,955.50.[1] We must decide the following issues: (1) Whether a "qui tam" settlement payment is taxable income to petitioner; (2) whether petitioner has substantiated that he paid contingent attorney's fees from the qui tam settlement; (3) if so, whether the attorney's fee payment is includable in petitioner's gross income and deductible by him as a miscellaneous itemized deduction; and (4) whether petitioner is liable for a section 6662(a) accuracy-related penalty.[2]

## FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The stipulations of fact are incorporated in this Opinion by reference and are so found.

At the time he filed the petition, petitioner resided in Florida.

Petitioner earned a bachelor's degree in business administration and accounting. From 1981 through July 1995, petitioner worked for Lockheed Martin. He was employed as a financial analyst until 1989, when he was promoted to chief of cost control for a $3.5 billion contract Lockheed Martin held with the U.S. Government. Petitioner remained in that position until July 1995.

During May and December 1995, petitioner filed two lawsuits against Lockheed Martin under the False Claims Act (FCA), 31 U.S.C. secs. 3729–3733 (2006), alleging that Lockheed Martin had defrauded the United States. The United States intervened in the first suit, but not the second.

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code (Code), as amended.

[2] Respondent has conceded that petitioner is not liable for the sec. 6651(a) delinquency addition to tax.

During September 2003, the United States, Lockheed Martin, and petitioner settled both suits. Lockheed Martin agreed to pay the United States $37.9 million. As part of the settlement, petitioner received a qui tam payment[3] of $8.75 million ($8.75 million qui tam payment) for his role as "relator". The U.S. Department of Justice filed and sent petitioner a Form 1099–MISC, Miscellaneous Income, reporting the $8.75 million qui tam payment in 2003. The $8.75 million qui tam payment was wired to petitioner's attorneys. Petitioner's attorneys subtracted from the $8.75 million qui tam payment a fee of 40 percent of the proceeds, or $3.5 million ($3.5 million attorney's fee payment) and then sent petitioner a check for the remaining $5.25 million ($5.25 million net proceeds of the qui tam payment).

On October 26, 2004, petitioner filed a Form 1040, U.S. Individual Income Tax Return, for his 2003 taxable year (return). Petitioner prepared the return without consulting a tax professional. Petitioner included the $5.25 million net proceeds of the qui tam payment on line 21 of his return as other income. However, the return omitted the $5.25 million net proceeds of the qui tam payment from the calculation of taxable income on line 40. The return showed a resulting taxable income of $793. Petitioner attached to the return Form 8275, Disclosure Statement, in which he argued that the $3.5 million attorney's fee payment had been held not to be taxable income by the U.S. Court of Appeals for the Eleventh Circuit. On the Form 8275, petitioner failed to include a citation of an opinion of the Eleventh Circuit, or of any Court of Appeals, standing for that proposition. Additionally, petitioner failed to identify on the Form 8275 any authority for excluding from his taxable income the $5.25 million net proceeds of the qui tam payment. At the time petitioner submitted the return, he was aware of the case of *Roco v. Commissioner*, 121 T.C. 160 (2003), which holds that qui tam payments are includable in gross income of the recipient.

---

[3] "Qui tam" is an abbreviation of the Latin phrase "qui tam pro domino rege quam pro se ipso in hac parte sequitur", which means "who pursues this action on our Lord the King's behalf as well as his own." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000). The individual who brings the qui tam suit on behalf of the Government is known as the relator. 31 U.S.C. sec. 3730(b) (2006); *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, *supra* at 769. For a discussion of the history of qui tam actions, see *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, *supra* at 774–777.

On October 24, 2004, petitioner sent respondent a letter detailing why he believed the $8.75 million qui tam payment was not taxable. Included as attachments to his letter were a copy of his return, a copy of the settlement agreement, a copy of *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000), and a two-page letter from Andrew Grosso, one of petitioner's attorneys in the FCA case, stating that, in his opinion, the $8.75 million qui tam payment was from Lockheed Martin and not the United States.

On December 6, 2004, respondent determined that a math error was made on petitioner's return and sent him a notice of assessment of a tax deficiency of $1,846,108.63.

On April 4, 2005, respondent sent petitioner a letter stating that the $8.75 million qui tam payment was taxable income and that any further consideration would require the filing of a Form 1040X, Amended U.S. Individual Income Tax Return.

On April 27, 2005, petitioner submitted a Form 1040X (amended return) that he prepared. The amended return excluded from gross income the entire $8.75 million qui tam payment, resulting in taxable income of $793.

On June 14, 2007, respondent sent petitioner a notice of deficiency.[4] Respondent included the entire $8.75 million qui tam payment as gross income and determined an income tax deficiency of $3,044,000, an accuracy-related penalty pursuant to section 6662 of $608,800, and a delinquency addition to tax pursuant to section 6651(a)(1) of $151,955.50.

## OPINION

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a).[5] Pursuant to section 7491(c), the Commissioner generally bears the burden of production for any penalty, but the taxpayer bears the ultimate burden of proof. *Higbee v. Commissioner*, 116 T.C. 438, 446 (2001).

The FCA, enacted during the U.S. Civil War, allows a private citizen (the relator) to bring a qui tam action on behalf

---

[4] The record is unclear whether the Dec. 6, 2004, assessment was abated before the notice of deficiency was sent on June 14, 2007.

[5] Petitioner does not contend that sec. 7491(a) should apply to shift the burden of proof to respondent, nor did he establish that it should apply to the instant case.

of the United States. 31 U.S.C. secs. 3729–3733. The FCA imposes civil liability upon any person who, among other things, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States. 31 U.S.C. sec. 3729(a). The relator may bring the claim on his own; however, the Government has the right to intervene in the case. 31 U.S.C. sec. 3730. The relator receives a share of the proceeds ranging from 15 to 25 percent if the Government intervenes, and 25 to 30 percent if the Government declines to intervene. 31 U.S.C. sec. 3730(d)(1) and (2). The relator may also be awarded attorney's fees. *Id.*

We must first decide whether the qui tam payment is includable in petitioner's gross income. Petitioner contends that the qui tam payment is a portion of a nontaxable reimbursement Lockheed Martin paid to the United States. Petitioner relies on *Roco v. Commissioner*, *supra* at 165 n.2, a case decided by this Court that held that qui tam payments were taxable as the equivalent of a reward but expressly reserved deciding whether a qui tam payment was a nontaxable share in the recovery of a reimbursement. Petitioner also relies on *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, *supra*, for the proposition that a qui tam claim is the assignment of the United States' reimbursement claim to the relator and that, because the payment would not be taxable to the U.S. Government, it should not be taxable to him as an assignee of the nontaxable claim, since as an assignee of the claim he stands in the shoes of the U.S. Government in pursuing the claim. Finally, petitioner contends that the qui tam payment is not taxable income because it is not proceeds from labor or capital.

Respondent contends that the qui tam payment is a taxable reward and should be included in petitioner's gross income.

Gross income is "all income from whatever source derived". Sec. 61(a). Courts have given a broad construction to the definition of gross income. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955). The effect of such a broad view of gross income is that exclusions from gross income are narrowly construed. *Commissioner v. Schleier*, 515 U.S. 323, 328 (1995).

As noted above, this Court has considered the issue of whether a qui tam payment is taxable income. In *Roco v. Commissioner*, 121 T.C. 160 (2003), the taxpayer received a qui tam payment from the United States for his role as relator in an action pursuant to the FCA. The Court ruled that rewards are included in gross income pursuant to section 1.61–2(a), Income Tax Regs., and that the qui tam payment was the equivalent of a reward and, therefore, includable in the taxpayer's gross income. *Roco v. Commissioner*, *supra* at 164.

Petitioner's reliance on note 2 of *Roco* is misplaced. In *Roco v. Commissioner*, *supra* at 165 n.2, the Court stated that it was not deciding whether a qui tam payment is a nontaxable share in the recovery of a reimbursement. Contrary to petitioner's argument, the footnote does not suggest that the Court would have held that a qui tam payment is a nontaxable share in the recovery of a reimbursement had the issue been properly before it. As the issue is before us now, we will address it.

In support of his position that a qui tam payment is a nontaxable share of the recovery, petitioner relies on *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000). Petitioner contends that he is the assignee of the United States' claim against Lockheed and, therefore, stands in the shoes of the Government in receipt of a nontaxable recovery. In *Vt. Agency of Natural Res.*, the Supreme Court considered whether a private individual has standing to bring a qui tam suit in Federal court against a State agency. On that issue, the Court held that the relator had standing because the FCA effected a partial assignment of the Government's claim to the relator and, as the assignee of such a claim, a relator has standing to assert the injury in fact suffered by the Government. *Id.* at 773. Petitioner's reliance on *Vt. Agency of Natural Res.* is misplaced. Although the FCA effects a partial assignment of the claim for the purposes of standing, the assignment of the claim does not change the character of the proceeds to petitioner. The qui tam payment is the equivalent of a reward as we held in *Roco v. Commissioner*, *supra* at 164. In *Vt. Agency of Natural Res.*, the Supreme Court made no ruling regarding the taxability of the qui tam payment to the relator or the character of the payment for Federal income tax purposes.

Petitioner also relies on *Lucas v. Earl*, 281 U.S. 111 (1930), contending that the qui tam payment was nontaxable income as an assignment to him by the Government of a portion of a nontaxable recovery. In *Lucas v. Earl*, *supra*, the taxpayer assigned a portion of his earned income to his wife. The Supreme Court held that a taxpayer cannot exclude his earnings from his gross income by an anticipatory assignment of them to another party. *Id. Lucas v. Earl*, *supra*, is inapposite. The payment from Lockheed Martin to the United States was not earned income; it was a reimbursement to the Government for fraudulent billing practices. Additionally, the $8.75 million qui tam payment was a reward to petitioner for bringing Lockheed's wrongdoing to light; it was not an assignment of a right to income. See *Roco v. Commissioner*, *supra*. Accordingly, *Lucas v. Earl*, *supra*, does not stand for the proposition that the claim assigned to the relator in an action pursuant to the FCA is a transfer of a portion of a nontaxable recovery that is nontaxable to the relator.

Petitioner also cites *Eisner v. Macomber*, 252 U.S. 189 (1920), for the definition of income. *Macomber* held that income was the "'gain derived from capital, from labor, or from both combined'". *Id.* at 207 (quoting *Stratton's Independence, Ltd. v. Howbert*, 231 U.S. 399, 415 (1913), and *Doyle v. Mitchell Bros. Co.*, 247 U.S. 179, 185 (1918)). However, the Supreme Court later observed that the *Macomber* definition of income did not take precedence over the inclusive statutory definition of gross income. *Commissioner v. Glenshaw Glass Co.*, *supra* at 431.

On the basis of the foregoing, we conclude that the qui tam payment is includable in petitioner's gross income for 2003 because it is the equivalent of a reward. None of petitioner's arguments persuade us that our holding in *Roco v. Commissioner*, *supra*, does not apply. Because the qui tam payment is includable in petitioner's gross income, we next decide whether petitioner must include the entire $8.75 million qui tam payment in gross income or is entitled to exclude the $3.5 million attorney's fee payment and thus include only the $5.25 million qui tam payment in gross income.

Petitioner contends that only $5.25 million of the qui tam payment must be included in gross income because he never received the $3.5 million attorney's fee payment. The $8.75

million qui tam payment was wired from the United States to petitioner's attorneys, who subtracted a 40-percent contingency fee and paid the $5.25 million net proceeds of the qui tam payment to petitioner by check.

Respondent contends that the $3.5 million attorney's fee payment is includable in petitioner's gross income and thus petitioner must include the entire $8.75 million qui tam payment in gross income.

Petitioner relies on *Cotnam v. Commissioner*, 263 F.2d 119, (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957),[6] *Davis v. Commissioner*, 210 F.3d 1346 (11th Cir. 2000), affg. T.C. Memo. 1998–248, and *Foster v. United States*, 249 F.3d 1275 (11th Cir. 2001), contending that they control the treatment of contingent attorney's fees. However, after those cases were decided, the Supreme Court held, in *Commissioner v. Banks*, 543 U.S. 426 (2005), that, when a litigant's recovery constitutes taxable income, that income includes the portion paid to attorneys as a contingent fee. Accordingly, we hold that the $3.5 million attorney's fee payment is includable in petitioner's gross income and, therefore, petitioner must include the entire $8.75 million qui tam payment in gross income.

We next address whether petitioner may deduct the $3.5 million attorney's fee payment as a miscellaneous itemized deduction. Both parties concede that, if petitioner has substantiated the attorney's fees, he may deduct them as a miscellaneous itemized deduction.[7] Accordingly, we address the issue of whether petitioner has properly substantiated his deduction.

Petitioner contends that his testimony and the attorney's fee agreement provide sufficient evidence to substantiate the deduction of attorney's fees. Respondent contends that the offered proof and testimony are insufficient and that peti-

---

[6] The Court of Appeals for the Eleventh Circuit has adopted as binding precedent the caselaw of the former Court of Appeals for the Fifth Circuit, as of Sept. 30, 1981. *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981). Absent stipulation to the contrary, any appeal of the instant case would be to the Court of Appeals for the Eleventh Circuit. The Tax Court follows the law of the circuit in which an appeal would lie if that law is on point. *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

[7] The American Jobs Creation Act of 2004, Pub. L. 108–357, sec. 703, 118 Stat. 1546, amended sec. 62(a) to allow an adjustment from gross income for attorney's fees paid by, or on behalf of a taxpayer in connection with a claim under the FCA. However, the adjustment is applicable only to fees and costs paid after Oct. 22, 2004, with respect to any judgment or settlement occurring after that date. *Id.* The settlement in the instant case was entered into during September 2003. Accordingly, the adjustment is not applicable to the instant case.

tioner should have called his attorneys to testify to the receipt of the funds.

Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving that he is entitled to the deductions claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), affd. 540 F.2d 821 (5th Cir. 1976). The taxpayer is required to maintain records that will enable the Commissioner to determine the correct liability. Sec. 6001.

Petitioner offered as proof of payment his testimony and a corroborating document that contained his contingency fee arrangement with his attorneys. On the basis of that evidence, we are persuaded that petitioner paid the attorney's fees and, therefore, hold that petitioner has substantiated the payment of the fees.

Finally, we consider whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a). Taxpayers are subject to a 20-percent penalty for any underpayment which is attributable to, among other things, (1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax. Sec. 6662(a) and (b); *New Phoenix Sunrise Corp. v. Commissioner*, 132 T.C. 161, 189, 191 (2009). Negligence includes any failure to make a reasonable attempt to comply with the Code. Sec. 6662(c); see *Neely v. Commissioner*, 85 T.C. 934, 947 (1985) (negligence is lack of due care or failure to do what a reasonably prudent person would do under the circumstances). Disregard of rules or regulations includes any careless, reckless, or intentional disregard. Sec. 6662(c). A substantial understatement of income tax occurs in any year where the amount of the understatement exceeds the greater of 10 percent of the amount required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). An understatement is the excess of the amount of tax required to be shown on the return over the amount of tax actually shown on the return less any rebates. Sec. 6662(d)(2)(A). The potential understatement will be reduced by the portion attributable to the tax treatment of an item if there was substantial authority for such treatment or if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in an attached statement and there is a reasonable basis for such treatment. Sec. 6662(d)(2)(B). An exception to the accuracy-

related penalty exists if the taxpayer can show there was reasonable cause for such portion and the taxpayer acted in good faith in regard to such portion. Sec. 6664(c).

Respondent contends that petitioner is liable for the accuracy-related penalty because he substantially understated his income tax as a result of failing to include the $8.75 million qui tam payment in his gross income. See sec. 6662(b)(2). Alternatively, respondent contends that the underpayment is attributable to negligence or disregard of rules and regulations. See sec. 6662(b)(1).

Petitioner contends that, pursuant to sections 6662(d)(2)(B) and 6664(c), he should not be liable for the accuracy-related penalty because he disclosed the full settlement payment on his return, there was reasonable cause for the omission from income, and he acted in good faith with respect to the omission of the settlement payment. Specifically, petitioner contends that, because he disclosed the $5.25 million net proceeds of the qui tam payment on the face of his return, excluded it from his calculation of taxable income, and filed Form 8275 disclosing the $3.5 million attorney's fee payment, he should not be liable for the accuracy-related penalty.

Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); *Higbee v. Commissioner*, 116 T.C. at 446. To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. *Higbee v. Commissioner*, *supra* at 446. The Commissioner has the burden of production only; the ultimate burden of proving that the penalty is not applicable remains on the taxpayer. *Id*.

Respondent offers petitioner's original return as evidence that petitioner understated his income tax and that the imposition of the accuracy-related penalty is appropriate. The original return does exclude the $8.75 million qui tam payment from the calculation of taxable income. We have held above that the $8.75 million qui tam payment is includable in petitioner's gross income. Accordingly, we conclude that respondent has met his burden of production to show that his

determination of the accuracy-related penalty is appropriate.[8]

Petitioner is liable for the accuracy-related penalty if his underpayment is a result of negligence or disregard of rules or regulations or if there is a substantial understatement of income tax. Sec. 6662(b); *New Phoenix Sunrise Corp. v. Commissioner*, *supra* at 189, 191. As discussed above, petitioner should have included the $8.75 million qui tam settlement payment in his gross income for his 2003 taxable year. Had he done so, a total tax liability of $3,044,110 would have resulted. Petitioner's deficiency of $3,044,000 exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return (10 percent of $3,044,110 is $304,411). See sec. 6662(d)(1)(A). Consequently, petitioner will be liable for the accuracy-related penalty unless the penalty can be reduced pursuant to section 6662(d)(2)(B) or avoided pursuant to section 6664(c).[9]

An underpayment may be reduced where the taxpayer has substantial authority for the tax treatment or, alternatively, the position is adequately disclosed and the taxpayer has a reasonable basis for such treatment. Sec. 6662(d)(2)(B); *W. Covina Motors, Inc. v. Commissioner*, T.C. Memo. 2008–237. Substantial authority is an objective standard based on an analysis of the law and its application to the relevant facts. *Myers v. Commissioner*, T.C. Memo. 1994–529; sec. 1.6662–4(d)(2), Income Tax Regs. Taking into account all authorities, substantial authority exists only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment. Sec. 1.6662–4(d)(3), Income Tax Regs. Substantial authority is not so stringent that a tax treatment must be upheld in litigation or have a greater-than-50-percent likelihood of being sustained. *O'Malley v. Commissioner*, T.C. Memo. 2007–79; sec. 1.6662–4(d)(2), Income Tax Regs.

Petitioner argues that substantial authority to exclude the qui tam payment from his gross income exists because of *Roco v. Commissioner*, 121 T.C. at 165 n.2. However, *Roco*'s

---

[8] Respondent has met his burden of production for both the negligence grounds of the accuracy-related penalty pursuant to sec. 6662(b)(1) and the substantial understatement grounds of the accuracy-related penalty pursuant to sec. 6662(b)(2).

[9] We note that the accuracy-related penalty was imposed on the taxpayer in *Roco v. Commissioner*, 121 T.C. 160 (2003).

holding is directly adverse to his position. As explained above, *Roco* is not substantial authority for his position, nor is any case petitioner cites. Petitioner has failed to show that the authorities in support of his treatment are substantial in relation to those supporting contrary treatment.

Petitioner further argues that the underpayment should be reduced because of adequate disclosure and a showing of reasonable basis. Sec. 6662(d)(2)(B)(ii). Adequate disclosure may be made either in a statement attached to the return or on the return. Sec. 1.6662–4(f), Income Tax Regs. Disclosure generally must be made on Form 8275 unless otherwise permitted by applicable revenue procedure—in this case, Rev. Proc. 2003–77, 2003–2 C.B. 964. Sec. 1.6662–4(f)(2), Income Tax Regs.

Petitioner included the $5.25 million net proceeds of the qui tam payment as other income on page 1 of his return. Qui tam payments are not addressed in Rev. Proc. 2003–77, *supra*. Consequently, the method for adequately disclosing the taxability of a qui tam payment was by the filing of a Form 8275. Petitioner's Form 8275 did not disclose the $5.25 million net proceeds of the qui tam payment. Instead, the Form 8275 disclosed the $3.5 million attorney's fee payment. Accordingly, we conclude that petitioner did not adequately disclose the $5.25 million net proceeds of the qui tam payment.

Additionally, we conclude that petitioner did not have a reasonable basis for his position with regard to the exclusion of the $5.25 million net proceeds of the qui tam payment from his gross income. Reasonable basis is a relatively high standard of reporting. Sec. 1.6662–3(b)(3), Income Tax Regs. Taxpayers must have a position that is more than merely arguable. *Halby v. Commissioner*, T.C. Memo. 2009–204; sec. 1.6662–3(b)(3), Income Tax Regs. As noted above, petitioner's position is based on a footnote from a case that holds in direct opposition to his position. See *Roco v. Commissioner*, 121 T.C. 160 (2003). Petitioner's arguments in support of his contention that *Roco* is distinguishable were at best merely colorable. Consequently, we hold that petitioner has not shown that he had a reasonable basis for his return position regarding the $5.25 million net proceeds of the qui tam payment.

We next consider whether the accuracy-related penalty should be reduced because petitioner adequately disclosed the exclusion of the $3.5 million attorney's fee payment from gross income and had a reasonable basis for that exclusion. Disclosure of petitioner's position regarding the $3.5 million attorney's fee payment on the Form 8275 attached to his return constitutes adequate disclosure. See sec. 1.6662–4(f)(1), Income Tax Regs. Petitioner relies on *Cotnam v. Commissioner*, 263 F.2d 119 (5th Cir. 1959), *Davis v. Commissioner*, 210 F.3d 1346 (11th Cir. 2000), and *Foster v. United States*, 249 F.3d 1275 (11th Cir. 2001), for the proposition that, at the time he filed his original return,[10] contingency fee payments made directly to attorneys were not includable in gross income. At that time, *Foster v. United States*, *supra*, had held that attorney's fees covered by a contingency fee arrangement should be excluded from gross income because of the Alabama attorney's lien law governing the recovery of such fees. Because petitioner was a resident of Florida, a State with similar lien laws, his reliance on *Foster* was a reasonable basis for the exclusion of the attorney's fee payment from his income.[11] At the time petitioner filed his original return, the Supreme Court had not yet decided *Commissioner v. Banks*, 543 U.S. 426 (2005), which overruled *Foster*.[12] Consequently, we hold that petitioner's underpayment for the purpose of the section 6662(b) penalty must be reduced by the portion of the penalty attributable to the $3.5 million attorney's fee payment.

Finally, we consider petitioner's contention that the accuracy-related penalty should not apply to the $5.25 million net proceeds of the qui tam payment he failed to include in his income because there was reasonable cause for his position and he acted in good faith. See sec. 6664(c); *New Phoenix Sunrise Corp. v. Commissioner*, *supra* at 192. Tax-

---

[10] Petitioner filed an amended return on Apr. 26, 2005. Respondent has not raised any issue regarding when liability for the penalty must be determined; i.e., as of the time of the original return or the amended return. We therefore need not address the issue. In another context, however, the Supreme Court has held that liability for the penalty is determined as of the time of the original return and not an amended return. See *Badaracco v. Commissioner*, 464 U.S. 386 (1984).

[11] The attorney's lien laws of Florida and Alabama are not exactly the same but are not sufficiently dissimilar to persuade us that *Foster v. United States*, 249 F.3d 1275 (11th Cir. 2001), is not a reasonable basis for the exclusion. *Foster* was decided by the Court of Appeals for the Eleventh Circuit, the same Court of Appeals serving as the venue, absent stipulation to the contrary, of appeals by Florida residents.

[12] *Commissioner v. Banks*, 543 U.S. 426 (2005), was decided on Jan. 24, 2005.

payers demonstrate reasonable cause when they exercise ordinary business care and prudence. *Richardson v. Commissioner*, 125 F.3d 551, 558 (7th Cir. 1997), affg. T.C. Memo. 1995–554. The most important factor in determining reasonable cause and good faith is the taxpayer's efforts to assess the proper tax liability. Sec. 1.6664–4(b)(1), Income Tax Regs. A taxpayer's experience, knowledge, and education may also be taken into account. *Bachmann v. Commissioner*, T.C. Memo. 2009–51; sec. 1.6664–4(b)(1), Income Tax Regs.

Petitioner did not have reasonable cause for his position or act in good faith. Petitioner is a sophisticated taxpayer, having earned a bachelor's degree in accounting and business administration and served as chief of cost control for Lockheed Martin for a $3.5 billion project. Petitioner failed to seek professional advice when preparing his 2003 tax return. See also *Bachmann v. Commissioner*, *supra* (taxpayer was a sophisticated banker who should have sought advice on tax treatment of receipt of large arbitration award). Moreover, petitioner's claimed authority for his position was a footnote from a case that reached a holding directly adverse to his position. See *Roco v. Commissioner*, *supra*. Petitioner's position was neither persuasive nor reasonable. Given his experience, knowledge, and education, petitioner has failed to meet his burden of proving the reasonable cause exception to the accuracy-related penalty. Consequently, we hold that petitioner is liable for the accuracy-related penalty with respect to the $5.25 million net proceeds of the qui tam payment.

The Court has considered all other arguments made by the parties and, to the extent we have not addressed them herein, we consider them moot, irrelevant, or without merit.

On the basis of the foregoing,

*Decision will be entered under Rule 155.*