142 T.C. No. 5

UNITED STATES TAX COURT

CRAIG PATRICK AND MICHELE PATRICK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16387-12.                    Filed February 24, 2014.

P-H received two monetary awards for bringing qui tam
complaints filed under the False Claims Act (FCA), 31 U.S.C. sec.
3730 (2006). Ps reported the awards as capital gains. R issued a
deficiency notice that disallowed capital gains treatment and
characterized the awards as other income.

R contends that a qui tam award does not result from the sale or
exchange of a capital asset, citing I.R.C. sec. 1222(1), (3). Ps contend
that under the FCA the relator sells information to the Government in
exchange for a share of any recovery. Ps further argue that the right
to receive a share of the recovery and the information provided to the
Government each constitute a capital asset.

<u>Held</u>: A qui tam award is not the result of a sale or exchange as
required under I.R.C. sec. 1221(b)(3).

<u>Held</u>, <u>further</u>, a qui tam award is ordinary income and is
therefore not a capital asset under I.R.C. sec. 1221(a).

Held, further, the information P-H provided to the Government was not his property and therefore was not a capital asset.


Dashiell C. Shapiro and Jonathan Van Loo, for petitioners.

Andrew R. Moore, for respondent.


OPINION


KROUPA, Judge: Respondent determined deficiencies of $716,883[1] and $94,714 in petitioners' Federal income tax for 2008 and 2009, respectively (years at issue). We must decide whether a qui tam award qualifies for capital gains treatment under section 1222.[2] We hold that a qui tam award does not satisfy the capital gains requirements.

Background

The parties submitted this case fully stipulated pursuant to Rule 122, and the facts are so found. The stipulation of facts and its accompanying exhibits are

_____

[1]All monetary amounts are rounded to the nearest dollar.

[2]All section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

incorporated by this reference. Petitioners resided in Wisconsin when they filed the petition.

Petitioner husband served as a reimbursement manager for Kyphon, Inc. (Kyphon). Kyphon designed, manufactured and marketed minimally invasive equipment to treat certain spinal conditions. The equipment allowed for treatment by outpatient procedure. Kyphon feared that medical providers would avoid purchasing the equipment because performing the procedure on an outpatient basis would no longer generate revenue from overnight hospital stays. Kyphon therefore instructed its sales representatives to market the procedure as inpatient. Certain medical providers that purchased the equipment had patients admitted when undergoing the treatment. Some medical providers billed this expense to the Government under Medicare.

Petitioner husband and another Kyphon employee, Charles Bates, believed that Kyphon's practices violated Federal law. Petitioner husband and Mr. Bates agreed to file a qui tam complaint and to split any relator's award. Petitioner husband had collected various documents he had helped create during his employment that demonstrated Kyphon's practices. Petitioner husband also kept some internal Kyphon documents and external marketing material.

Petitioner husband and Mr. Bates filed a qui tam complaint alleging Kyphon had defrauded the Government. Kyphon eventually settled the matter for $75 million. The Government intervened after Kyphon agreed to the settlement.

Petitioner husband and Mr. Bates then filed additional qui tam complaints against various medical providers. Those entities also entered into cash settlements to resolve the complaints.

Petitioner husband received a relator's share of $5,979,282 in 2008 and $856,123 in 2009. The Government issued to petitioner Forms 1099-MISC, Miscellaneous Income, for the years at issue reflecting those amounts.

Petitioners jointly filed Forms 1040, U.S. Individual Income Tax Return, for the years at issue. Petitioners reported the awards (less attorney's fees) as capital gains. Respondent issued petitioners a deficiency notice that disallowed capital gains treatment for the awards and characterized the amounts as other income. Petitioners timely filed a petition challenging respondent's determinations.

## Discussion

We are asked to decide whether a qui tam relator's share award is entitled to capital gains treatment. Petitioners argue that petitioner husband sold information to the Government in exchange for a share of any recovery. Respondent, on the other hand, argues that the relator's share is similar to a reward and does not

satisfy the requirements for capital gains treatment.  We will consider qui tam

actions and the requirements for capital gains treatment.[3]

I.  Qui Tam and the False Claims Act

We begin with a qui tam action.  The phrase "qui tam" is short for a Latin

phrase[4] meaning one "who pursues this action on our Lord the King's behalf as

well as his own."  See Vt. Agency of Natural Res. v. United States ex rel. Stevens,

529 U.S. 765, 768 n.1 (2000).  Congress has enacted multiple qui tam provisions,

including the False Claims Act (FCA), 31 U.S.C. secs. 3729-3733, in 1863.  Id. at

768-769.  The FCA imposes civil liability on any person who knowingly presents

a false or fraudulent claim for payment or approval.  31 U.S.C. sec. 3729(a)

(2006).

The FCA authorizes a person, referred to as the relator, to file under seal a

complaint seeking reimbursement on the Government's behalf.  Id. sec.

---

[3]The taxpayer generally bears the burden of proving the Commissioner's determinations are erroneous.  Rule 142(a).  The burden of proof may shift to the Commissioner if the taxpayer satisfies certain conditions.  Sec. 7491(a). Resolving all factual issues here is based on a preponderance of the evidence. Therefore, we need not consider which party has the burden of proof.  See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

[4]The entire phrase is "qui tam pro domino rege quam pro se ipso in hac parte sequitur."  See Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 768 n.1 (2000).

3730(b)(1). The relator must serve on the Government the complaint and all supporting information the relator possesses before the action may proceed. Id. sec. 3730(b)(2). The Government may intervene and prosecute the matter. Id. sec. 3730(c)(1), (d)(4). The Government may request dismissal or settle the action with the court's approval. Id. sec. 3730(c)(2)(A) and (B). Further, the Government may seek to limit the relator's participation in the litigation. Id. sec. 3730(c)(2)(C). The relator is responsible for litigating the matter if the Government does not intervene. Id. sec. 3730(b)(4)(B).

If the Government prosecutes the complaint, then the court shall award a relator between 15% and 25% of any amount recovered. Id. sec. 3730(d)(1). The court shall award a relator between 25% and 30% of any amount recovered when the Government does not intervene. Id. sec. 3730(d)(2). The court may decrease the award if the relator relied primarily on publicly available information or choose to award nothing if the relator planned or participated in the underlying conduct. Id. sec. 3730(d)(1), (3).

## II. Whether a Qui Tam Award Is a Capital Gain

We now consider whether a qui tam award is a capital gain. Petitioners argue that their qui tam awards are entitled to capital gains treatment. A capital gain is a "gain from the sale or exchange of a capital asset." Sec. 1222(1), (3).

Petitioners consequently must demonstrate that a qui tam award resulted from a "sale or exchange" of a "capital asset" as those terms are intended. Petitioners theorize that the FCA forms a contract under which the relator sells information to the Government in exchange for a share of the recovery. See United States ex rel. Russell v. Epic Healthcare Mgmt. Grp., 193 F.3d 304, 309 (5th Cir. 1999). Respondent disputes that there was a sale or exchange or that petitioners held a capital asset. We agree with respondent. We address each requirement in turn.

A. Sale or Exchange Requirement

We first consider whether petitioners received the qui tam awards through a transaction considered to be a sale or exchange. See sec. 1222. Petitioners argue that a relator sells his information to the Government. Respondent contends that the relator's statutory obligation to provide all supporting information does not constitute a sale or exchange. We agree with respondent.

Transactions involving the transfer of capital assets must be "in the nature of a sale" to qualify for capital gains treatment. Freda v. Commissioner, 656 F.3d 570, 577 (7th Cir. 2011), aff'g T.C. Memo. 2009-191. We have applied the ordinary meaning of the phrase "sale or exchange" because it is not defined in the Code. Nahey v. Commissioner, 111 T.C. 256, 262 (1998), aff'd on other grounds, 196 F.3d 866 (7th Cir. 1999). The phrase, however, is interpreted narrowly as not

every disposition constitutes a sale or exchange. <u>See, e.g.,</u> <u>Helvering v. William Flaccus Oak Leather Co.</u>, 313 U.S. 247 (1941) (demonstrating that the term "sale or exchange" is narrower than the term "sale or other disposition"); <u>Barr v. Commissioner</u>, T.C. Memo. 2009-250 (surrender of an insurance policy not a sale or exchange). A sale is a transfer of property for a fixed price in money or its equivalent. <u>Commissioner v. Brown</u>, 380 U.S. 563, 571 (1965). An exchange occurs when property is transferred in return for other property. <u>Guest v. Commissioner</u>, 77 T.C. 9, 24 (1981).

Petitioners argue the sale or exchange requirement is met because the qui tam complaint establishes the relator's contractual right to a share of the recovery. We disagree. Absent a legislature's clear indication to contractually bind the government, a law does not create private contractual rights. <u>Tempel v. Commissioner</u>, 136 T.C. 341, 348 (2011) (citing <u>Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe R.R. Co.</u>, 470 U.S. 451, 465-466 (1985)). The Government does not purchase information from a relator under the FCA. Rather, it permits the person to advance a claim on behalf of the Government. The award is a reward for doing so. No contractual right exists.

Petitioners analogize the relator's provision of information to the sale of a trade secret. A transfer of trade secret rights, however, constitutes a sale for

capital gains purposes only when all substantial rights are transferred. Freda v. Commissioner, T.C. Memo. 2009-191. Petitioner husband did not transfer any rights to the Government.

Put simply, a relator does not sell or exchange his information for a fixed amount of money or in return for other property. The sale or exchange requirement is not met.

B. Capital Asset Requirement

We now turn to the capital asset requirement. The term "capital asset" means property held by the taxpayer.[5] Sec. 1221(a). Respondent contends that petitioners have not demonstrated the existence of a capital asset. Petitioners contend that the capital asset was the right to future income that vested when petitioner husband filed the qui tam complaints. Petitioners alternatively argue that the documents and information provided to the Government were capital assets. We agree with respondent.

1. Ordinary Income Doctrine

We now focus on whether petitioners' right to a share of the recovery was a capital asset. The definition of capital asset under section 1221 is bound by the

---

[5]Eight categories of property are excluded from this definition. See sec. 1221(a)(1)-(8). The parties agree that those exclusions do not apply.

ordinary income doctrine. <u>Tempel v. Commissioner</u>, 136 T.C. at 346. The ordinary income doctrine excludes from the definition of a capital asset "property representing income items or accretions to the value of a capital asset themselves properly attributable to income." <u>United States v. Midland-Ross Corp.</u>, 381 U.S. 54, 57 (1965). The right to future payments of ordinary income is not a capital asset. <u>Commissioner v. P.G. Lake, Inc.</u>, 356 U.S. 260, 265-266 (1958); <u>Davis v. Commissioner</u>, 119 T.C. 1, 6-7 (2002).

A qui tam award is a reward for the relator's efforts in obtaining repayment to the Government and is includible in a taxpayer's gross income. <u>Campbell v. Commissioner</u>, 134 T.C. 20, 26 (2010), <u>aff'd</u>, 658 F.3d 1255 (11th Cir. 2011); <u>Roco v. Commissioner</u>, 121 T.C. 160, 164 (2003); sec. 1.61-2(a)(1), Income Tax Regs. Petitioners did not receive a right to the relator's share in exchange for an underlying investment of capital. <u>See</u> <u>Alderson v. United States</u>, 686 F.3d 791, 796-797 (9th Cir. 2012). Petitioners' right to income is attributable to a reward. A reward, as stated above, is treated as ordinary income. Thus, the right to receive a portion of the recovered amount is not a capital asset.[6]

---

[6]Petitioners also argue that the qui tam award is entitled to capital gains treatment under sec. 1234A. The gain or loss attributable to the cancellation, lapse, expiration or other termination of a right or obligation for property that is a capital asset of the taxpayer will be treated as the sale of capital asset. Sec.

(continued...)

### 2. Property

The parties also dispute whether the information petitioner husband provided constitutes a capital asset. Petitioners argue that petitioner husband had a property interest in the information and documents he disclosed to the Government. Respondent contends the documents and information are not a capital asset because petitioner husband did not have a legal right to exclude others from use and enjoyment of that property. We agree with respondent.

Information supporting a qui tam complaint and provided to the Government does not constitute a capital asset. Id. A general characteristic of property is that an owner has the legal right to exclude others from use and enjoyment of that property. Id. at 796. The most significant rights held by the owner of a trade secret are the rights to prevent both the unauthorized use and the disclosure of the secret. Freda v. Commissioner, T.C. Memo. 2009-191. Petitioner husband obtained documents through his employment. The FCA obligated petitioner husband to give the Government all supporting documentation. Petitioner husband did not demonstrate any right to prevent Kyphon or the medical providers from using or disclosing the information. See

---

[6](...continued)
1234A. As stated, petitioners have not demonstrated the existence of a capital asset, and sec. 1234A does not apply.

Alderson, 686 F.3d at 796-797. Thus, we hold that petitioners did not demonstrate that the information provided to the Government was a capital asset.

C. Conclusion

Petitioner husband helped bring to light systematic fraud, causing the recovery of tens of millions of dollars. Those efforts are to be applauded and were rewarded. Rewards, however, are treated as ordinary income, and the qui tam award is subject to tax as such. Petitioners have not demonstrated that either requirement for capital gains treatment was met.

We have considered all the arguments of the parties, and, to the extent we have not addressed them, we find them to be irrelevant, moot or meritless.

To reflect the foregoing,

Decision will be entered

for respondent.