*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0307P (6th Cir.)
File Name: 04a0307p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

J. HILTON BROOKS, III, M.D.,
    *Plaintiff-Appellant,*

*v.*

No. 03-5610

UNITED STATES OF AMERICA,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 01-00452—J. B. Johnson, Magistrate Judge.

Argued: August 5, 2004

Decided and Filed: September 10, 2004

Before: KENNEDY, SUTTON, and COOK, Circuit
Judges.

---

## COUNSEL

**ARGUED:** Philip E. Wilson, WILSON LAW OFFICE,
Lexington, Kentucky, for Appellant. Kenneth W. Rosenberg,
UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee. **ON BRIEF:** Philip E.
Wilson, WILSON LAW OFFICE, Lexington, Kentucky, for
Appellant. Kenneth W. Rosenberg, Kenneth L. Greene,

UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee.

---

## OPINION

---

KENNEDY, Circuit Judge. The taxpayer, Dr. Hilton
Brooks, appeals the district court's order granting summary
judgment to the United States, holding that no part of a *qui
tam* relator's award granted under Section 3730(d) of the
False Claims Act is excludable from gross income under
Internal Revenue Code § 104(a)(2) because the award does
not constitute "damages received ... on account of personal
injuries" as § 104(a)(2) requires. We agree with the district
court, and AFFIRM.

## BACKGROUND

The taxpayer, Dr. Hilton Brooks, was a physician on the
medical staff at Pineville Community Hospital, Pineville,
Kentucky, and was a member of the hospital's quality
assurance committee. While carrying out his committee
duties, Dr. Brooks discovered what he determined to be
numerous billing improprieties by Pineville Community
Hospital and two physicians. Rather than correcting the
improprieties, the hospital rebuffed Dr. Brook's efforts and
subjected him to a variety of retaliatory abuses. For instance,
he was pressured to cease investigating the fraudulent billing
practices and to relocate his practice elsewhere; he was
threatened with loss of clinical privileges; he was reviewed
"unfavorably" and advised that he would not be reappointed
to the medical staff; and he was criticized in the hospital
newsletter for having a "disruptive attitude."

Pursuant to the *qui tam* provisions of the False Claims Act
(FCA), 31 U.S.C. § 3729 et seq., which allows individual
citizens to sue for fraud on behalf of the government and to

receive part of the government's recovery, Dr. Brooks filed an FCA claim asserting that the hospital and two of its doctors had submitted fraudulent Medicare and Medicaid bills to the government for payment. Although the United States is entitled to intervene in such a case, it initially declined to do so here. Dr. Brooks litigated the action through discovery, and trial was scheduled. At that point, the United States opted to intervene.

Rather than proceed to trial, the defendants agreed to pay a total of $2.5 million dollars to the United States to settle the FCA action for fraudulent billing. In the settlement agreement the defendants admitted that they had violated numerous regulations governing various health care programs relating to payments for medical procedures. The district court approved this settlement agreement and granted Dr. Brooks a relator's award of 25% of the net settlement amount remaining after payment of attorney fees and reimbursable costs. The net dollar amount of the *qui tam* award was $210,067, which resulted in income tax of $78,607.

In addition, a separate settlement agreement was entered into between Dr. Brooks, the hospital, and four doctors at the hospital, to release them from any personal injury claims, including claims for retaliation and defamation, that might exist against them. The hospital paid Dr. Brooks the sum of $300,000, which was expressly stated to be "damages received on account of personal injuries within the meaning of Section 104(a)(2)."

Dr. Brooks included the $210,067 relator's award in his gross income and timely paid $78,607 in income taxes on that amount. He excluded from income the separate settlement of $300,000 in compensatory damages for "personal injuries," with full disclosure to the IRS, and the IRS approved the exclusion. He thereafter claimed a refund of the $78,607 tax he paid on the relator's award, asserting that at least part of the award can be excludable from income under 26 U.S.C. § 104(a)(2) as damages received on account of personal

injuries. The IRS disallowed his claim for refund, and Dr. Brooks filed suit in the district court seeking a refund of the income tax he had paid on the *qui tam* relator award. After the district court ruled in favor of the government, this appeal followed.

## ANALYSIS

We review a grant of summary judgment de novo. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Both parties agree that this case presents no issue of material fact with respect to the issue of law presented.

The Internal Revenue Code broadly defines gross income as "all income from whatever source derived." 26 U.S.C. § 61(a). The Supreme Court has broadly construed and repeatedly emphasized the sweeping scope of this section. *See Commissioner v. Schleier*, 515 U.S. 323, 327 (1995); *See also Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955). The corollary to § 61(a)'s broad construction, the Court has noted, is "that exclusions from income must be narrowly construed." *Schleier*, 515 U.S. at 328 (quoting *United States v. Burke*, 504 U.S. 229, 248 (Souter, J., concurring in judgment)). The taxpayer's *qui tam* relator's award, therefore, must constitute gross income unless the taxpayer is able to show that it is "expressly excepted by another provision in the Tax Code." *Id.*

The taxpayer relies upon § 104(a)(2) (1995) in arguing that his award, or at least part of it, should be exempted from gross income. Section 104(a)(2) provides that gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or

sickness."[1] The implementing treasury regulation, 26 C.F.R. § 1.104-1(c) (1994), defines "damages received" as "an amount received ... through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Thus, under the statute and regulation, for income to be excluded under § 104(a)(2), the taxpayer must 1) "demonstrate that the underlying cause of action giving rise to the recovery is based upon tort or tort type rights;" and 2) "show that the damages were received on account of personal injuries or sickness." *Schleier*, 515 U.S. at 337 (1995) (internal quotation marks omitted).

In attempting to establish that at least part of his relator's award may be excluded from gross income pursuant to § 104(a)(2), the taxpayer presents the following argument. He first notes that a relator's *qui tam* award is limited to a percentage. Since the government intervened here, his potential award ranged from fifteen to twenty-five percent of the net amount received by the government. § 3730(d)(1). He argues that the percentage to be used in determining the amount of a relator's *qui tam* award is influenced by whether the relator suffered personal injuries or sickness. Since the amount of a relator's *qui tam* award is influenced by whether he suffered personal injuries in prosecuting the FCA action, he concludes, the award thus compensates him for the personal injuries he received while prosecuting the action.

Rather than immediately address the taxpayer's argument, we first consider the requirements for exclusion under § 104(a)(2) as enunciated by the *Schleier* Court. The taxpayer runs into immediate difficulty with the first prong, as he fails to demonstrate that the underlying cause of action giving rise

---

[1] Congress amended § 104(a)(2) in 1996 to read, gross income does not include "the amount of any damages received ... on account of personal *physical* injuries or *physical* sickness." (emphasis added). This amended version does not apply to the present case as the district court granted the taxpayer his award in 1995, prior to the 1996 amendment.

to his recovery is based upon tort or tort type rights. The fact that a *qui tam* plaintiff may suffer personal injuries while prosecuting an FCA claim does not transform the FCA claim into one based upon tort or tort type rights. The primary purpose of the FCA claim is to ensure that the United States gains restitution of money fraudulently obtained from it. Thus, the underlying cause of action that gives rise to the taxpayer's relator's award is based upon contract fraud, not a tort.

Not only is the underlying cause of action not based upon tort or tort type rights, but it also does not compensate the taxpayer for an injury inflicted upon him. Rather, the FCA permits a *qui tam* plaintiff to bring a suit in the name of the United States for contract fraud committed against it. 31 U.S.C. § 3730(b)(1). The Supreme Court's decision in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), highlights the fact that the injury that is redressed in a *qui tam* action under the FCA is an injury to the government. The issue in *Vermont Agency of Natural Resources* was whether a *qui tam* plaintiff had standing to bring an FCA claim on behalf of the United States against a State. *Id.* at 768. The Court noted that an interest sufficient to confer standing to maintain the suit "must consist of obtaining compensation for, or preventing, the violation of a legally protected right." *Id.* at 772. A *qui tam* plaintiff, the Court noted, "has suffered no such invasion [of a legally protected right]." *Id.* at 773. Although the Court found that a *qui tam* plaintiff suffers no invasion of a legally protected right, it nonetheless found that a *qui tam* plaintiff has standing to assert a claim based on "the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor. [Therefore, the False Claims Act] can reasonably be regarded as effecting a partial assignment of the Government's damages claim" to the *qui tam* plaintiff. *Id.*

The structure of the act further supports the conclusion that the *qui tam* relator's award is not based upon tort or tort type rights. As the district court observed, any tort that could be

considered to have been committed against the taxpayer would be one for retaliation by the defendants. This wrong is separately compensated for under the FCA's "whistleblower" provision, 31 U.S.C. § 3730(h). Section 3730(h) provides that an "employee who is discharged, demoted, ... harassed, or in any other manner discriminated against ... by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of a [FCA claim] ... shall be entitled to all relief necessary to make the employee whole." Thus, this section, § 3730(h), not § 3730(d), provides compensation for injuries suffered by the *qui tam* plaintiff. Although § 3730(h) only applies to employees (rather than independent contractors, for instance), this does not militate against our conclusion that Congress did not intend § 3730(d) to compensate *qui tam* plaintiff's for personal injuries. The fact that Congress, in enacting § 3730(h), not only considered allowing personal injury damages, but in fact actually provided a cause of action for their recovery, supports our conclusion that Congress did not intend § 3730(d) to compensate *qui tam* plaintiffs for personal injuries.

The taxpayer has also failed to establish that his award was received on account of personal injuries or sickness. In arguing that his relator's award was received, at least in part, on account of personal injuries or sickness, the taxpayer principally relies upon *United States v. NEC Corp.*, 11 F.3d 136 (11th Cir. 1994). In *NEC*, the plaintiff brought a *qui tam* action against the United States to recover a portion of a settlement procured by the government as a result of information provided by the plaintiff. 11 F.3d at 137. Subsequently, however, the plaintiff died. *Id.* The issue in *NEC* was whether the plaintiff-relator's *qui tam* action survived his death. *Id.* To determine whether the cause of action survived the *qui tam* plaintiff's death, the court needed to consider whether the action was remedial or penal with respect to the *qui tam* plaintiff. *Id.* In considering this issue, the court first asked whether the statute redressed individual wrongs or more general wrongs to the public. *Id.* In

concluding that the statute does not redress solely general wrongs to the public, but rather also redresses individual wrongs suffered by a *qui tam* relator, the court opined that a *qui tam* relator may endure emotional strain when he discovers fraud as he is faced with the choice "of keeping silent about the fraud, and suffering potential liability ..., or reporting the fraud and suffering repercussions, [such] ... as dismissal." *Id.* at 138. Even if we were to agree with the *NEC* court that a *qui tam* action is remedial with respect to the *qui tam* plaintiff, that would nonetheless not compel the conclusion that a *qui tam* relator's award is received on account of personal injuries within the meaning of § 104(a)(2) of the Tax Code.

The FCA provides that the percentage of the award that the *qui tam* plaintiff will receive depends upon "the extent to which the [*qui tam* plaintiff] substantially contributed to the prosecution of the action." § 3130(d)(1). Even if the percentage that a *qui tam* plaintiff receives in prosecuting a FCA claim were influenced by whether he received personal injuries in prosecuting the action, that fact would still not transform the *qui tam* plaintiff's recovery into one "on account of personal injuries." It is the nature of the underlying claim itself that determines whether the plaintiff has received compensation on account of personal injuries within the meaning of § 104(a)(2). Regardless of whether a *qui tam* plaintiff received fifteen percent or twenty-five percent of the proceeds recovered by the government, the fact that he receives anything at all is on account of his decision to bring the lawsuit on behalf of the government, and not on account of any personal injuries inflicted upon him.

Since we conclude 1) that the underlying cause of action (the FCA claim) is based upon contract fraud inflicted upon the government, not a tort inflicted upon the relator, and 2) that the relator received his award on account of initiating the prosecution of the FCA claim on behalf of the government, not on account of personal injuries inflicted upon himself, we therefore AFFIRM the district court's

holding that a *qui tam* relator's award is not excludable from gross income under § 104(a)(2).