SEVEN W. ENTERPRISES, INC. & SUBSIDIARIES, PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

HIGHLAND SUPPLY CORPORATION & SUBSIDIARIES, PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 13594–08, 13595–08.          Filed June 7, 2011.

From February 2001 until March 2002, M worked as a consultant for P1 and P2 (collectively, Ps). During this period, M prepared P1's 2000 tax return and P2's 2001 tax return. In March 2002, Ps hired M as their vice president of taxes. As Ps' vice president of taxes, M prepared and signed, on behalf of Ps, P1's 2001, 2002, and 2003 tax returns and P2's 2002, 2003, and 2004 tax returns. In 2000 through 2004, Ps incorrectly concluded that they were not liable for personal holding company taxes and, as a result, understated their tax liabilities relating to those years. R issued P1 a notice of deficiency relating to 2000 through 2003 and P2 a notice of deficiency relating to 2003 and 2004. In the notices, R determined that Ps were liable for accuracy-related penalties. Ps contend that they had reasonable cause for their underpayments and acted in good faith. Alternatively, Ps contend that they reasonably relied on the advice of M in 2000 when M served as a consult-

ant and in 2001 through 2004 when he served as vice president of taxes.

1. *Held*: Pursuant to sec. 1.6664–4(b)(1) and (c)(1), Income Tax Regs., P1 is not liable for an accuracy-related penalty relating to 2000 because it reasonably relied on M to prepare its tax return.

2. *Held*, *further*, M does not qualify as "a person, other than the taxpayer", pursuant to sec. 1.6664–4(c)(2), Income Tax Regs., with respect to the returns which he signed on behalf of Ps, and therefore the aforementioned regulation is not applicable to Ps' underpayments of taxes relating to 2001 through 2004.

3. *Held*, *further*, Ps are liable for accuracy-related penalties relating to 2001 through 2004.

*Patrick B. Mathis*, *William J. Niehoff*, and *Philip D. Speicher*, for petitioners.

*James M. Cascino*, *David B. Flassing*, and *William G. Merkle*, for respondent.

FOLEY, *Judge*: The issue for decision is whether petitioners are liable for section 6662(a)[1] accuracy-related penalties relating to tax years ending in 2000, 2001, 2002, 2003, and 2004 (years in issue).[2]

## FINDINGS OF FACT

The Weder family controlled two closely held businesses: Highland Supply Corporation (HSC) and Seven W. Enterprises, Inc. (7W). HSC was the parent of a group of corporations (collectively, HSC Group) which filed a consolidated Federal income tax return and manufactured floral, packaging, and industrial wire products. HSC Group included Highland Southern Wire, Inc., and Weder Investment, Inc. (WI).[3] 7W, a corporation principally engaged in leasing nonresidential buildings, was the parent of a group of entities (collectively, 7W Group), which filed a consolidated Federal income tax return. 7W owned an 89-percent interest in Weder Agricultural Limited (WAL), a limited partnership.

In 1990, HSC Group and 7W Group (collectively, petitioners) hired William Mues, a certified public accountant, to

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years in issue.

[2] The years in issue are the tax years ending Dec. 31, 2000, 2001, 2002, and 2003, with respect to 7W Group and the tax years ending Apr. 30, 2003 and 2004, with respect to HSC Group.

[3] WI is wholly owned by Highland Southern Wire, Inc., which is wholly owned by HSC.

serve as their tax manager. Mues had experience relating to personal holding company tax matters and had previously worked at Deloitte Haskins & Sells, preparing tax returns for individuals, corporations, partnerships, and trusts, and at Peabody Coal Co., preparing consolidated returns. In 1991, petitioners promoted Mues to vice president of taxes. While employed by petitioners, Mues drafted documents, performed general legal work, and prepared returns for petitioners and petitioners' shareholders. Petitioners provided Mues with full access to all resources necessary to handle petitioners' tax matters (i.e., access to corporate and accounting personnel, corporate records, research databases, and outside professionals). In addition, petitioners authorized Mues to sign, on their behalf, Internal Revenue Service (IRS) documents.

On December 12, 1995, Southpac Trust International, Inc., as trustee of the Family Trust (STI), an entity unrelated to petitioners, executed a $4,062,000 interest-bearing promissory note (the promissory note) for the benefit of HSC. In 1996, HSC assigned the promissory note to WI.

In 1997, the IRS began auditing HSC Group's 1995 return and eventually expanded the audit to include HSC Group's 1996 and 1997 returns. On April 2, 1999, the IRS and HSC Group reached a settlement with respect to the audit relating to HSC Group's 1995, 1996, and 1997 returns. The agreed adjustments were in excess of $2.2 million and included the disallowance of more than $450,000 of deductions relating to HSC's president's personal expenses. These adjustments were set forth on Form CG–4549, Income Tax Examination Changes, which required HSC Group's signature. Mues signed his name on the line labeled "Signature of Taxpayer". The IRS and petitioners also reached settlements relating to HSC Group's and 7W Group's 1998 and 1999 returns. HSC Group had recurring adjustments relating to research and development expenses.

While an employee of petitioners and prior to 2001, Mues obtained a master's degree in business administration and began law school as a part-time student. In January 2001, Mues resigned as vice president of taxes and continued his legal studies as a full-time student. After resigning, Mues, pursuant to an agreement, provided petitioners with consulting services concerning tax matters and was not subject to petitioners' supervision or direction. As a consultant, Mues

prepared 7W Group's 2000 return and HSC Group's 2001 return. In March 2002, after Mues completed law school, petitioners hired him to serve as their vice president of taxes. In accordance with his responsibilities, Mues prepared and signed, on behalf of petitioners, 7W Group's 2001, 2002, and 2003 returns and HSC Group's 2002, 2003, and 2004 returns.

With respect to the years in issue, Mues incorrectly characterized petitioners' income and concluded that petitioners were not liable for personal holding company taxes. The personal holding company tax is a penalty tax on undistributed income and is designed to discourage individuals from using closely held corporations to defer taxation on dividends, interest, rents, and other forms of passive income. See secs. 541, 543; *Fulman v. United States*, 434 U.S. 528, 530–531 (1978); H. Rept. 704, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 554, 562–563; S. Rept. 558, 73d Cong., 2d Sess. (1934), 1939–1 C.B (Part 2) 586, 596–598. On HSC Group's 2003 and 2004 returns, Mues incorrectly concluded that interest income, relating to the promissory note held by WI, was income from a source within HSC Group and that WI was not liable for the personal holding company tax. As a result, HSC Group, whose consolidated return included WI, understated its 2003 and 2004 tax liabilities. On 7W Group's 2000, 2001, 2002, and 2003 returns, Mues made a similar mistake with respect to interest income received by WAL. During 2000, 2001, 2002, and 2003, WAL received interest income relating to an installment note issued by an entity outside 7W Group, and each year 7W, in determining its income, took into account a portion of that interest income equal to 7W's distributive share. For purposes of calculating the personal holding company tax, however, Mues did not take this income into account. In addition, Mues misapplied the personal holding company tax rules relating to rental income and, in doing so, incorrectly concluded that 7W's rental income was not subject to the personal holding company tax. As a result, 7W Group understated its 2000 through 2003 tax liabilities.

On March 7, 2008, respondent issued 7W Group a notice of deficiency relating to 2000, 2001, 2002, and 2003 and HSC Group a notice of deficiency relating to 2003 and 2004 (collectively, notices). In the notices, respondent determined that petitioners were liable for section 6662(a) accuracy-related

penalties. On June 4, 2008, petitioners, whose principal place of business was Highland, Illinois, timely filed petitions with the Court seeking redetermination of the penalties set forth in the notices.

## OPINION

Section 6662(a) and (b)(2) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to any substantial understatement of income tax. The parties agree that petitioners' incorrect reporting of personal holding company tax on their returns relating to the years in issue resulted in substantial understatements of income tax as defined in section 6662(d). See sec. 7491(c); *Higbee v. Commissioner*, 116 T.C. 438, 446–447 (2001). Section 6664(c)(1), however, provides that no penalty shall be imposed if a taxpayer demonstrates that there was reasonable cause for the underpayment and that the taxpayer acted in good faith. See also sec. 7491(c); *Higbee v. Commissioner, supra*. The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability; experience, knowledge, and education; and reliance on the advice of a professional tax advisor. Sec. 1.6664–4(b)(1), Income Tax Regs.

## I.  *7W Group's 2000 Return*

With respect to its 2000 return, 7W Group contends that it is entitled to relief from the accuracy-related penalty because it relied in good faith on the advice of Mues, an independent, competent tax advisor. Indeed, when he prepared 7W Group's 2000 return, Mues, having resigned from his position as petitioners' vice president of taxes, was working for petitioners pursuant to a consulting agreement. Respondent emphasizes that Mues continued to perform the same activities before and after his resignation; requests, in essence, that we ignore the consulting agreement; and urges us to hold that Mues was not sufficiently independent for petitioners to avail themselves of relief pursuant to section 6664(c).

We reject respondent's contention. Mues resigned, signed a valid consulting agreement, and served as petitioners' inde-

pendent contractor. See *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–325 (1992); *Weber v. Commissioner*, 103 T.C. 378, 387–390 (1994) (delineating factors to be considered when determining an employment relationship between parties), affd. 60 F.3d 1104 (4th Cir. 1995). In addition, Mues signed 7W Group's 2000 return as a paid preparer and the consulting agreement specifically provided that he was not subject to petitioners' supervision. 7W Group provided Mues, an experienced and knowledgeable tax professional, with all of the relevant information necessary to prepare the return and relied, in good faith, on Mues to accurately and correctly prepare 7W Group's 2000 return. Therefore, it was reasonable for 7W Group to rely on Mues to prepare its 2000 return. See sec. 6664(c); *Montgomery v. Commissioner*, 127 T.C. 43, 67 (2006) (stating that it is reasonable to rely on an advisor's professional judgment if the taxpayer "selects a competent tax adviser and supplies him or her with all relevant information" and that "a taxpayer who seeks the advice of an adviser does not have to challenge the adviser's conclusions, seek a second opinion, or try to check the advice by reviewing the tax code himself or herself." (citing *United States v. Boyle*, 469 U.S. 241, 250–251 (1985))); sec. 1.6664–4(b)(1), (c)(1), Income Tax Regs. Accordingly, 7W Group is not liable for the section 6662(a) accuracy-related penalty relating to 2000.

## II. *Petitioners' 2001 Through 2004 Returns*

Petitioners contend that they exercised ordinary business care and prudence relating to their 2001 through 2004 returns. We disagree. It is unclear whether petitioners' myriad of mistakes was the result of confusion, inattention to detail, or pure laziness, but we are convinced that petitioners and Mues failed to exercise the requisite due care. See *United States v. Boyle*, *supra* at 250–251; *Neonatology Associates, P.A. v. Commissioner*, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Petitioners are sophisticated taxpayers. See *Campbell v. Commissioner*, 134 T.C. 20, 33 (2010); sec. 1.6664–4(b)(1), Income Tax Regs. Indeed, Mues was a well-educated and experienced tax professional with full access to petitioners' records and personnel. Petitioners readily acknowledge that

Mues was familiar with the personal holding company tax rules, yet emphasize that these rules are complex and that Mues' mistakes were reasonable. The personal holding company tax rules certainly are complex, but Mues failed to apply some of the most basic provisions of those rules. In fact, Mues conceded that in applying the section 543(a)(2) test he "truncated the test" and "misapplied the second prong". He simply did not read the entire test. Moreover, he did not understand or do the requisite work to ascertain the basic facts relating to petitioners' income items. For example, the applicability of the personal holding company tax rules to HSC Group (or any member of the affiliated group) depended in part on the determination of whether income items were from inside or outside the affiliated group. See sec. 542(b). Mues failed to recognize that STI (i.e., the debtor on the note held by WI) was an entity outside the HSC Group. Mues was petitioners' vice president of taxes both when the note was executed and when it was assigned. Furthermore, Mues testified that he knew at the time he prepared HSC Group's returns that the note's debtor was outside the group, yet he inexplicably treated the interest income as if it was derived from within HSC Group and not subject to the personal holding company tax. When asked by the Court whether this was reasonable, Mues stated: "it seemed reasonable at the time. It seems less reasonable now in hindsight." Petitioners' repeated audit adjustments relating to multiple IRS audits coupled with Mues' experience, expertise, and education further bolster our conclusion that petitioners failed to exercise ordinary business care and prudence as to the disputed items. See *Cobb v. Commissioner*, 77 T.C. 1096, 1101–1102 (1981), affd. without published opinion 680 F.2d 1388 (5th Cir. 1982).

Petitioners further contend that the accuracy-related penalties should not apply because they relied on the advice of Mues—a competent tax advisor. Again, we disagree. As previously discussed, good-faith reliance on the advice of an independent, competent tax advisor may constitute reasonable cause and good faith. Sec. 1.6664–4(b)(1), (c)(1), Income Tax Regs.; see also *Neonatology Associates, P.A. v. Commissioner*, *supra* at 98. The right to rely on professional tax advice, however, is subject to certain restrictions. See *United States v. Boyle*, *supra* at 250–251; sec. 1.6664–4(b), (c),

Income Tax Regs. Pursuant to section 1.6664–4(c)(2), Income Tax Regs., "advice" is "any communication * * * setting forth the analysis or conclusion of a *person, other than the taxpayer*". (Emphasis added.)

Petitioners contend that, pursuant to section 7701(a)(1) and (14), the definition of a "taxpayer" is limited to petitioners (i.e., the persons subject to the tax) and does not include Mues—petitioners' employee. A corporation can act (e.g., sign the corporation's return) only through its officers. See sec. 6062; *DiLeo v. Commissioner*, 96 T.C. 858, 875 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Petitioners authorized Mues to act as both the vice president of taxes *and* the taxpayer. Indeed, unlike the 2000 return, which Mues signed as a paid preparer, the 2001 through 2004 returns were signed by Mues on petitioners' behalf. Simply put, Mues does not qualify as "a person, other than the taxpayer" with respect to the returns which he signed on behalf of the taxpayer (i.e., petitioners). Thus, petitioners did not have reasonable cause for the 2001 through 2004 underpayments.[4] See sec. 1.6664–4(b) and (c), Income Tax Regs. We need not, and do not, opine as to whether reliance on an in-house professional tax advisor may establish reasonable cause in other circumstances.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

*Appropriate decisions will be entered*.

---

[4] We note that petitioners, citing several regulations, contend that respondent's position is contrary to regulations providing that reasonable cause includes reliance on the advice of "house counsel". The cited regulations simply are not applicable. Secs. 53.4941(a)–1(b)(6), 53.4945–1(a)(2)(vi), 53.4955–1(b)(7), and 53.4958–1(d)(4)(iii)(A), Foundation Excise Tax Regs., relate to prohibited transactions and the application of excise taxes. Sec. 1.856–7(c)(2)(iii), Income Tax Regs., relates to the determination of whether an entity qualifies, pursuant to sec. 856(c), as a real estate investment trust. These regulations are distinguishable because they explicitly provide that legal counsel includes "house counsel" and that the advice of counsel must be in a "reasoned written opinion". Furthermore, while sec. 1.6664–4, Income Tax Regs., provides a standard for determining whether a taxpayer has acted in good faith, the cited regulations relate to whether a taxpayer has acted willfully.