[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13677

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 28, 2011
JOHN LEY
CLERK

Tax Court No. 21209-07

ALBERT D. CAMPBELL,

Petitioner - Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

_____

Appeal from a Decision of the
United States Tax Court

_____

(September 28, 2011)

Before DUBINA, Chief Judge, HILL, Circuit Judge, and GOLDBERG,* Judge.

PER CURIAM:

_____

*Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

Taxpayer Albert D. Campbell was awarded and received a net $5.25 million *qui tam* payment from the government as a "relator" in two lawsuits settled against government contractor Lockheed Martin (Lockheed) under the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733 (2006). Campbell asserted that the award was not taxable.[1]

The Tax Court disagreed. It held that the entire amount was includable in Campbell's gross income as the equivalent of a reward, *Roco v. Comm'r*, 121 T.C. 160, 164 (2003), pursuant to I.R.C. § 61(a); and (2) that he was liable for an accuracy-related penalty pursuant to I.R.C. § 6662(a), based on the omission of the award from his reported taxable income. Finding no clear error, we affirm the judgment of the Tax Court.

## I.

Campbell is a sophisticated taxpayer. *See Seven W. Enter., Inc. & Subs. v. Comm'r*, 136 T.C. No. 26, 2011 WL 2260389, at *4 (T.C. June 7, 2011). He had a business degree in accounting. He began working for Lockheed in 1981. For eight years he was a financial analyst. After that, Lockheed promoted him to chief

---

[1] "*Qui tam*" is short for a Latin phrase which means he or she "who pursues this action on our Lord the King's behalf as well as his own." *Vt. Agency of Natural Res. v. U. S. ex rel. Stevens*, 120 S.Ct. 1858, 1860 n.1 (2000). The individual who brings the *qui tam* suit on behalf of the government is referred to as a relator. *Id.* at 1860. The history of *qui tam* actions is discussed at length. *Id*. at 1863-65.

of cost control for a $3.5 billion contract held with the government. Campbell held that position until 1995.

In 1995, Campbell became a whistleblower against his former employer. He filed two lawsuits under the FCA, claiming that Lockheed had defrauded the United States.[2] In 2003, Lockheed settled with the government for $37.9 million. Campbell received a *qui tam* payment of $8.75 million for his role as relator. A Form 1099-MISC, Miscellaneous Income, was issued to him from the United States Department of Justice for $8.75 million.

The money was wired to Campbell's attorneys. They subtracted their 40% fee of $3.5 million, and sent Campbell a check for the remaining balance of $5.25 million.

Campbell prepared his 2003 tax return without consulting outside counsel. He displayed the $5.25 million sum on line 21 as "other income" but omitted the amount from the calculation of taxable income on line 40. His resulting taxable income was $793.

Campbell also attached Form 8275, Disclosure Statement, to his 2003 return. Without citing any authority in support of his assertions, he stated on the form that the $3.5 million in attorney's fees was not taxable income, and that the

---

[2] The United States intervened in the first lawsuit, but not the second.

$5.25 million net *qui tam* payment was excludable from his taxable income.

In 2007, the Commissioner of Internal Revenue sent Campbell a notice of deficiency: (1) for failing to include the $5.25 million *qui tam* payment in his gross income under I.R.C. § 61(a); and (2) for an accuracy-related penalty under I.R.C. § 6662, as his exclusion of the *qui tam* payment resulted in a substantial understatement of income tax. Campbell filed a petition in the Tax Court. The Tax Court held in favor of the Commissioner on both issues. This appeal followed.

## II.

In 2000, the Supreme Court held that a relator has standing to bring a *qui tam* action in federal court against a state agency because the FCA affected a partial assignment of the government's claim to the relator. *See Vt. Agency of Natural Res. v. U.S. ex rel. Stevens,* 120 S.Ct. 1858, 1863 (2000).[3] As the assignee of such a claim, a relator has standing to assert the injury-in-fact suffered by the government. *Id*. In *Vermont Agency*, the Supreme Court made no ruling on the taxability or non-taxability of a *qui tam* payment.

---

[3] Campbell's argument that, as the assignee of the United States' claim against Lockheed, he stands in the shoes of the government in receipt of a nontaxable recovery, is misplaced. *See Vt. Agency*, 120 S.Ct. at 1863. Also meritless is Campbell's reliance upon the 1930 Supreme Court case of *Lucas v. Earl*, 50 S.Ct. 241 (1930), for the same proposition.

In Campbell's case, the Tax Court found that although the FCA affects a partial assignment of the claim for purposes of standing, the assignment of the claim does not change the taxability of the proceeds to him. *See Roco*, 121 T.C. at 164. Therefore, the *qui tam* payment is the equivalent of a reward, and taxable. *Id.*[4]

## III.

We review the Tax Court's application of the tax code *de novo* and its findings of fact for clear error. *See Estate of Jelke v. Comm'r*, 507 F.3d 1317, 1321 (11th Cir. 2007). Whether a taxpayer acted with reasonable cause and in good faith is a question of fact. *See Green v. Comm'r*, 507 F.3d 857, 866 (5th Cir. 2007).

## IV.

Section 61(a) of the Internal Revenue Code defines gross income as "all income from whatever source derived." I.R.C. § 61(a). There is no exclusion enumerated in the Code for *qui tam* awards. *See* Treas. Reg. § 1.61-1(a). "The taxpayer's *qui tam* relator's award, therefore, must constitute gross income unless

---

[4] Campbell's reliance upon footnote 2 in *Roco*, which stated that the Tax Court was not deciding whether a *qui tam* payment is a nontaxable share in the recovery of a reimbursement, is meritless. *Roco v. Comm'r*, 121 T.C. 160, 165 n.2 (2003). Here the Tax Court correctly found that, contrary to Campbell's argument, the footnote cannot be interpreted to mean that the *qui tam* payments are nontaxable shares in the recovery of a reimbursement. *Roco* held that *qui tam* payments are the equivalent of a reward, and therefore taxable. *Id.* at 164.

the taxpayer is able to show that it is 'expressly excepted by another provision in the Tax Code.'" *Brooks v. United States*, 383 F.3d 521, 523 (6th Cir. 2004). The payment to a relator in a *qui tam* action is a financial incentive for a private person to provide information and prosecute claims relating to fraudulent activity. *See United States ex rel. Semtner v. Med. Consultants, Inc.,* 170 F.R.D. 490, 495 (W.D.Okla. 1997). It is not a penalty imposed on the wrongdoer. *Id*.

Although the question of whether or not *qui tam* payments are includable in gross income is an issue of first impression in this circuit, other courts that have addressed this issue have uniformly concluded that they are. *See Brooks*, 383 F.3d at 525 (*qui tam* payments are not excludable from gross income as personal injuries inflicted upon the relator in tort); *Roco*, 121 T.C. at 164-65 (*qui tam* payments are the equivalent of a reward, and rewards are generally includable in gross income); *Trantina v. United States*, 512 F.3d 567, 570 n.2 (9th Cir. 2008) (the legal question is whether *qui tam* payments should be taxed as ordinary income or as a capital gain); *Alderson v. United States*, 718 F.Supp.2d 1186, 1191 (C.D.Cal. 2010) (the parties do not dispute that a *qui tam* award is taxable income, the dispute is whether or not the award is ordinary income or capital gain). We

agree with our sister courts that *qui tam* payments are includable in gross income.[5]

The taxpayer in *Brooks* was a physician who filed an FCA claim against a hospital and two of its doctors for submitting fraudulent Medicare and Medicaid bills to the government for payment. *Brooks*, 383 F.3d at 522. Dr. Brooks received a *qui tam* payment of $210,067. He included the relator's reward in gross income, and timely paid $78,607 in income taxes on that amount. *Id.*

Dr. Brooks also received a second settlement of $300,000, releasing the defendants from any personal injury claims, including claims for retaliation and defamation, as "damages received on account of personal injuries within the meaning of [I.R.C. §] 104(a)(2)." *Brooks*, 383 F.3d at 522. He excluded the $300,000 from his gross income as compensatory damages for personal injuries, under I.R.C. § 104(a)(2). *Id.*

Dr. Brooks then filed a claim for refund for the $78,607 in income tax that he had paid on the relator's award. *Brooks*, 383 F.3d at 522. The Commissioner disallowed his claim for refund and the district court agreed with the government. The Sixth Circuit affirmed finding "1) that the underlying cause of action (the FCA claim) is based upon contract fraud inflicted upon the government, not a tort

---

[5] We are also not persuaded by Campbell's argument that the legislative history of the FCA determines that we must hold otherwise.

inflicted upon the relator, and 2) that the relator received his award on account of initiating the prosecution of the FCA claim on behalf of the government, not on account of personal injuries inflicted upon himself, we therefore [affirm] the district court's holding that a *qui tam* relator's award is not excludable from gross income under [I.R.C.] § 104(a)(2)." *Id*. at 525.

Although no part of Campbell's case involved a tort action, we agree with the Sixth Circuit. Campbell initiated the prosecution of an FCA claim on behalf of the government. His relator award is not excludable from gross income. It is in the nature of a reward, and is includable in gross income. *See Roco*, 121 T.C. at 164.

V.

We now turn to the issue of whether or not Campbell is liable for a 20% accuracy-related penalty for underpayment under the Internal Revenue Code. A penalty is imposed when there is: (1) negligence or disregard of rules or regulations; or (2) substantial understatement of income tax. I.R.C. §§ 6662(a), (b). Negligence includes any failure to make a reasonable attempt to comply with the tax code. I.R.C. § 6662(c). Disregard of rules or regulations includes any

careless, reckless, or intentional disregard. *Id.*[6]

Campbell contends that he is not liable for the accuracy-related penalty because: (1) he disclosed the *qui tam* payment on his tax return, both on line 21 and on Form 8275; (2) there was reasonable cause for the omission; and (3) that he acted in good faith. The Commissioner contends that while the *qui tam* payments were "reflected" on Campbell's return, they were "dropped" in calculating his ultimate tax liability and that such underpayment resulted in a "substantial understatement of income" under I.R.C. § 6662(b). We agree. Campbell did not disclose the amount in good faith and with reasonable cause merely by mentioning them in two places on his return. He incredulously and conveniently ignored or overlooked the amount when it was time to do the math. He showed no reasonable cause for that omission. It was an overt and intentional act to underpay.

## VI.

We now turn to whether Campbell satisfies either exception to the

---

[6] A substantial understatement of income tax occurs in any year where the amount of the understatement exceeds the greater of ten percent (10%) of the amount required to be shown on the return or $5,000. I.R.C. § 6662(d)(1)(A). The understatement will be reduced if there was substantial authority for such treatment, or if the relevant facts are adequately disclosed in the return or attached statement, or if there was reasonable basis for such treatment. I.R.C. § 6662(d)(2)(B). An exception exists if the taxpayer can show reasonable cause for the understatement and that he or she acted in good faith. I.R.C. § 6664(c).

imposition of the 20% penalty. Did he provide: (a) substantial authority for the omission, (b) did he adequately disclose the omission, or (c) did he have a reasonable basis for the omission? I.R.C. § 6662(d)(2)(B). Did he have: (a) a reasonable cause for his position, or (b) did he prove that he acted in good faith: I.R.C. § 6664(c).

The Tax Court determined in its findings of fact that Campbell did not meet either exception. Campbell asserted that he relied upon substantial case law authority. He contends he made adequate disclosure and showed reasonable basis. The Tax Court found to the contrary. Campbell's citations to authority were no authority for his position. Certainly they are neither reasonable or persuasive. They are meritless. The Tax Court did not clearly err in finding that Campbell did not qualify for the first exception to the accuracy-related penalty under Section 6662(d)(2)(B).

Next Campbell claims he has provided reasonable cause for his position. The Tax Court found no such reasonable cause. Campbell claims he acted in good faith. Campbell is a sophisticated taxpayer who chose not to consult a professional tax consultant in preparing his return. The Tax Court did not clearly err in finding that Campbell did not qualify for the second exception to the accuracy-related penalty under Section 6664(c).

VII.

The Tax Court correctly concluded that the entire $5.25 million *qui tam* payment awarded to Campbell under the FCA was includable in gross income and that Campbell was liable for the Section 6662(a) accuracy-related penalty.

The judgment of the Tax Court is

AFFIRMED.