[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13758
_____

Agency No. 12864-10

W.E.R., Minor
STEVEN W. CONNER, Guardian,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision
of the United States Tax Court

_____

(March 15, 2013)

Before JORDAN and KRAVITCH, Circuit Judges and HORNBY,[*] District Judge.

PER CURIAM:

---

[*] Honorable D. Brock Hornby, United States District Judge for the District of Maine sitting by designation.

W.E.R., a minor, appeals from the Tax Court's decision disallowing his claim for an $8,000 first-time homebuyer's credit under 26 U.S.C. § 36. We affirm because the Tax Court did not clearly err in finding that W.E.R. purchased the home from related persons—his parents.

**I**

When he was three years old, W.E.R. received $463,907.10 in settlement proceeds as a result of trauma he suffered at birth, leaving him mentally and physically handicapped. In 2004, the probate court appointed Steven W. Conner as guardian of the proceeds because W.E.R.'s parents—Mr. and Mrs. Rodriguez—were not "financially sophisticated." *See* Trial Tr. at 32. W.E.R. remained in the custody of and under the care of his parents at all times relevant to this appeal.

In early 2009, when W.E.R. was seven years old, Mr. Conner learned that Mr. and Mrs. Rodriguez were experiencing financial difficulties and had missed several mortgage payments. Mr. Conner petitioned the probate court for permission to loan Mr. and Mrs. Rodriguez approximately $103,000 from W.E.R.'s funds so they could refinance their mortgage. After the court's approval, Mr. Conner contacted Bank of America, the mortgage holder, to pay the mortgage in full, but—according to Mr. Conner's testimony—Bank of America informed him that it would not accept payment from a guardianship.

On March 23, 2009, Mr. Conner sent a letter to Mr. and Mrs. Rodriguez stating that he would purchase the home for the outstanding balance of the mortgage, which was $106,621.46. On May 6, 2009, Mr. Conner transferred $106,621.46 from W.E.R.'s account into an escrow account of Mr. Conner's accounting firm. On May 11, 2009, Mr. and Mrs. Rodriguez executed a warranty deed transferring the home to Mr. Conner in his individual capacity.

On May 14, 2009, Mr. Conner's accounting firm purchased a cashier's check in the amount of $106,621.46, payable to Bank of America, and on the next day sent the check to satisfy the outstanding mortgage. On May 18, 2009, Mr. Conner executed a warranty deed, in his individual capacity, transferring the home to himself, in his capacity as guardian for W.E.R. A separate purchase and sale agreement, executed by Mr. Conner on that same day, indicated that the home was sold to W.E.R. for exactly $106,621.46. On May 28, 2009, Mr. Conner prepared W.E.R.'s federal income tax return and claimed a first-time homebuyer's credit in the amount of $8,000 for his purchase of the home.

The Commissioner determined that W.E.R. was not eligible for the credit and asserted a tax deficiency in the amount of $8,000. Mr. Conner petitioned the Tax Court for a redetermination of the deficiency. The Tax Court found that Mr. Conner was "a mere 'conduit through which to pass title' from Mr. and Mrs. Rodriguez to [W.E.R.]," disregarded the intermediate transfer of title from the

parents to Mr. Conner in his individual capacity, and compressed the various steps into a single economic transaction—a purchase of the home by W.E.R. from his parents. *See* T.C. Memo at 13.

## II

We review the Tax Court's legal conclusions *de novo*, and its factual findings for clear error, even when based in whole or in part on stipulated evidence. *See Frank Lyon Co. v. United States*, 435 U.S. 561, 581 n. 16 (1978); *Campbell v. Comm'r of Internal Revenue*, 658 F.3d 1255, 1258 (11th Cir. 2011); *Bone v. Comm'r of Internal Revenue*, 324 F.3d 1289, 1293 (11th Cir. 2003). Except for Mr. Conner's testimony and the March 23, 2009, letter he sent to Mr. and Mrs. Rodriguez (Exhibit 29-P), all the facts were stipulated by the parties.

In the Housing and Economic Recovery Act of 2008, Congress enacted a first-time homebuyer credit, allowing a tax refund equal to ten percent of the purchase price of the residence, up to a maximum amount of $8,000. *See* Pub. L. No. 110-289, § 3011(a); 26 U.S.C. § 36. The first-time homebuyer credit is not available to an individual who purchases a home from a related person; related persons include direct ancestors such as parents. *See* 26 U.S.C. §§ 36(c)(3)(A)(i), 36(c)(5), & 267(c)(4).

In determining the tax consequences of a transaction, courts look at the substance of the transaction rather than just its form. *See, e.g., Kirchman v.*

*Comm'r of Internal Revenue*, 862 F.2d 1486, 1491, 1492 (11th Cir. 1989) ("Shams in substance are transactions that actually occurred but which lack the substance their form represents."). The Supreme Court, for example, has held that "[a] sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title." *Comm'r of Internal Revenue v. Court Holding Co.*, 324 U.S. 331, 334 (1945). In a subsequent decision, the Supreme Court explained that where "there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax avoidance features . . . the Government should honor the allocation of rights and duties effected by the parties." *Frank Lyon Co.*, 435 U.S. at 583-84. Once a court determines that a transaction is a sham, no further inquiry into intent is necessary. *See Kirchman*, 862 F.2d at 1492.

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving by a preponderance of the evidence that it is erroneous. *See Estate of Whitt v. Comm'r of Internal Revenue*, 751 F.2d 1548, 1556 (11th Cir. 1985). The taxpayer also has the burden of showing that a transaction was not a sham, *see Kirchman*, 862 F.2d at 1490, but 26 U.S.C. § 7491(a)(1) provides an exception that shifts the burden of proof to the

5

Commissioner as to any factual issue relevant to a taxpayer's liability if the taxpayer introduces credible evidence with respect to that issue.

## III

On appeal, W.E.R. argues that the Tax Court erred in finding that Mr. Conner acted as a conduit. Relying on *Frank Lyon Co.*, W.E.R. asserts that the transaction was not structured for tax-avoidance purposes, but instead (1) economic realities (i.e., Bank of America's refusal to accept payoff directly from W.E.R.) prevented him from buying the home from his parents, and (2) regulatory realities (i.e., Florida laws regarding the fiduciary duties of guardians) required Mr. Conner to sell the home. Moreover, W.E.R. argues that because he presented credible evidence—Mr. Conner's testimony and the letter from Mr. Conner to his parents—the burden of proof shifted to the Commissioner under § 7491(a)(1).

Having reviewed the record and considered the oral argument of counsel, we cannot say that the Tax Court's findings of fact were clearly erroneous. Nor do we find error in the Tax Court's conclusions of law. Although W.E.R. nominally purchased the home from Mr. Conner in Mr. Conner's individual capacity, the Tax Court did not clearly err in finding that, in substance, W.E.R. purchased the home from his parents. *See Henson v. Comm'r of Internal Revenue*, 887 F.2d 1520, 1526

(11th Cir. 1989) (court's finding, that a sale was a sham transaction, was "a finding of fact.").

With respect to Mr. Conner's assertion that W.E.R. did not purchase the home directly from his parents because Bank of America would not accept payment directly from W.E.R., the Tax Court—as the fact finder—declined to accept such "self-serving testimony." The Tax Court noted that Mr. Conner had not introduced any documentation, or called any witnesses, to corroborate his testimony that Bank of America refused to accept payment from W.E.R. The evidence thus failed to support his contention that the bank would not accept the loan payoff from W.E.R.'s funds. The Tax Court also noted that Mr. Conner had "researched section 36 before the purchase and sale of the home and . . . must also have concluded that a purchase by [W.E.R.] directly from Mr. and Mrs. Rodriguez would make [him] ineligible" for the first-time homebuyer credit. *See* T.C. Memo at 12.

As for Mr. Conner's assertion that he purchased the home as an investment, the Tax Court noted that (1) W.E.R.'s parents did not receive any money from Mr. Conner for the purported sale of the home, and (2) Mr. Conner had transferred the exact payoff amount from W.E.R.'s bank account into his accounting firm's escrow account before both the transfer of title from W.E.R.'s parents to Mr.

Conner and the purchase of the cashier's check by Mr. Conner. Thus, Mr. Conner used W.E.R.'s funds, and not his own, to pay off the mortgage.

These facts lead to the inescapable conclusion that the transaction lacked economic substance. *See Frank Lyon Co.*, 435 U.S. at 573 ("In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed."); *Court Holding Co.*, 324 U.S. at 334 ("The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title."). Based on the evidence, the Tax Court reasonably found that the substance of the transaction was a purchase by W.E.R from his parents.

Finally, we cannot say that the Tax Court erred in discounting Mr. Conner's testimony, especially given the Tax Court's role as finder of fact and its observation of Mr. Conner's demeanor on the witness stand. Because the Tax Court rejected Mr. Conner's testimony as uncorroborated and "self-serving," W.E.R. failed to produce "credible evidence" pursuant to § 7491(a)(1). He therefore failed to satisfy the condition precedent for burden-shifting to occur.

We note that Mr. Conner may have been motivated by concern for his ward. *See* Trial Tr. at 10 ("I was concerned not only for the financial well-being of the child [but also that] the child [might] be excluded from the home because of

foreclosure or movement out of the home . . . . The child is severely mentally and physically handicapped."); Trial Tr. at 20 ("My purchase was solely for the benefit of the ward.").  But that does not change the result.  *See Kirchman*, 862 F.2d at 1492 ("The analysis of whether . . . a transaction's substance is that which its form represents . . . does not necessarily require an analysis of a taxpayer's subjective intent").

## IV

The Tax Court did not clearly err in finding that W.E.R., in substance, purchased the home from related persons, thereby making him ineligible for the first-time homebuyer credit.

**AFFIRMED.**