[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12615
Non-Argument Calendar

_____

Agency No. 12357-16

ANTHONY ITALO PROVITOLA,
KATHLEEN A. PROVITOLA,

Petitioners-Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court

_____

(June 11, 2021)

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Anthony Provitola and Kathleen Provitola, husband and wife proceeding *pro se*, appeal decisions of the United States Tax Court finding them liable for tax deficiencies for the years 2013 and 2014 and imposing accuracy-related penalties under 26 U.S.C. § 6662.  The Tax Court determined, after a bench trial, that the Commissioner of the Internal Revenue Service ("IRS") properly disallowed business deductions the Provitolas claimed on their joint 2013 and 2014 income-tax returns because their company, Viovision Ventures LLC ("Viovision"), was still in the start-up phase and not yet an active trade or business.  Finding no error in the Tax Court's findings of fact or conclusions of law, we affirm.

## I.

The relevant facts are largely undisputed.  The Provitolas are husband and wife and were married at all relevant times.  Anthony is an inventor and registered patent attorney.  He practices law through his firm Anthony I. Provitola, PA ("APPA"), an S corporation of which he is the sole member and owner.

In 2003, Anthony began pursuing an insight about visual perception.  By 2005, he had developed a visual system that allowed certain viewers to see a standard two-dimensional television image as three dimensional.  Between 2005 and 2007, he sought and obtained several patents for the visual system.  Then, in 2007, the Provitolas formed Viovision to develop, manufacture, and market a device that used

2

his visual system.    Since then, Anthony has provided management, product development, and product-design services to Viovision, all through APPA.

Between 2007 and 2015, Anthony tested, experimented with, and further developed the television device "to bring the system to a manufacturable state."  He testified that during the years at issue (2013 and 2014), Viovision required a tremendous amount of work related to design, sourcing of materials, and researching potential patent issues.  Viovision produced its first inventory of the device in 2015.  Meanwhile, Anthony hired third parties to create a pricing system and develop a website through which Viovision eventually could market and sell the device.  The website was created in 2016 and 2017, but it was not accessible to the public through the time of trial.  Viovision had not attempted to market or sell any products at the time of trial in 2019, as Anthony was still working through pricing and other issues.

## II.

Our focus here is on the years 2013 and 2014.  Viovision did not report any income or expenses until 2013.  In January 2013, APPA billed Viovision for five years of services provided by Anthony.  APPA billed Viovision $12,000 per year for 2009 through 2013, for a total balance of $60,000.  Then, in January 2014, APPA billed Viovision an additional $12,000.  The Provitolas capitalized Viovision to pay APPA, which then paid Anthony.

3

The Provitolas filed joint income-tax returns for the years 2013 and 2014. In their 2013 return, they included a Schedule C (Profit or Loss from Business) for Viovision, claiming a $36,000 deduction for expenses Viovision paid to APPA for Anthony's "legal and professional services." The Provitolas' 2014 return similarly deducted Viovision's payments to APPA on Schedule C, with $22,000 categorized as legal and professional fees, and $20,326 categorized as "other expenses."

In separate notices of deficiency dated December 31, 2013, and December 31, 2104, the IRS disallowed the claimed deductions because, in its view, the Provitolas did not establish that the business expenses were paid or incurred during the taxable year or that they were "ordinary or necessary." The notices determined income-tax deficiencies of $7,818 (2013) and $11,328 (2014) and imposed accuracy-related penalties of $1,536.60 (2013) and $2,265.60 (2014). *See* 26 U.S.C. § 6662.

The Provitolas timely petitioned the Tax Court for review of the 2013 and 2014 notices of deficiency on May 20, 2016, and July 31, 2017, respectively. They then moved for summary judgment in both cases. The Tax Court denied the motions, citing the existence of disputed factual issues and the need for more evidentiary development. The factual issues, according to a November 7, 2017, order denying summary judgment, included "whether petitioners engaged in the Schedule C activity with an actual and honest profit motive" and "whether the legal and professional services fees paid by petitioners were ordinary and necessary

4

expenses."  After the cases were consolidated in 2018, the Provitolas again moved for summary judgment, but the Tax Court denied the motion.

The Tax Court held a bench trial, at which Anthony was the sole witness.  The Tax Court then made oral findings sustaining the notices of deficiency and the accuracy-related penalties.  The court explained that taxpayers may deduct ordinary and necessary expenses paid or incurred in carrying on any trade or business if business activities have commenced, but that expenses for a business that is still in the start-up phase are not "ordinary and necessary" expenses to the business and are therefore not deductible under 26 U.S.C. § 162(a).  So according to the court, no deduction was available unless Viovision had "begun an active trade or business." And although Viovision took "significant steps to prepare for the business of selling Mr. Provitola's invention," the court found that it had not yet engaged in an active trade or business in 2013 and 2014 because it had not "attempted to market or sell a product," "made any sales," or "made its website public."

Next, the Tax Court next held that the accuracy-related penalties applied.  The court observed that the amount of taxpayers' understatement of income satisfied the statutory threshold for the penalties under 26 U.S.C. § 6662, and it found that the Provitolas had failed to demonstrate that any affirmative defense applied.

5

The Tax Court entered written decisions sustaining the tax deficiencies and penalties. The Provitolas timely appealed.[1]

## II.

The Provitolas first argue that the Tax Court erred in denying their pretrial summary-judgment motions. In their view, the Tax Court, in its November 7, 2017, order denying one such motion, narrowed the issues in the case to "whether the Petitioners engaged in Schedule C activity with an actual and honest profit motive." They say that the IRS failed to rebut their evidence on this point, so summary judgment should have been granted, but instead the Tax Court violated law of the case by permitting the IRS to argue the new theory of start-up expenses at trial.

The denials of the Provitolas' pretrial summary-judgment motions are not reviewable on appeal. In *Lind v. United Parcel Service, Inc.*, we held that "the denial of summary judgment is not reviewable on appeal after a full trial and final judgment on the merits." 254 F.3d 1281, 1284–86 (11th Cir. 2001). Because the Tax Court entered judgment on the merits after a full trial, we "will not review the pretrial denial of a motion for summary judgment." *Id.* The Provitolas' argument that this

---

[1] Even though the Provitolas' July 4, 2020, notice of appeal was not filed within the ordinary 90-day deadline, *see* 26 U.S.C. § 7483, the notice was timely by operation of 26 U.S.C. § 7508A(a) and I.R.S. Notice 2020-23, which postponed the applicable deadlines to July 15, 2020. *See* I.R.S. Notice 2020-23, Update to Notice 2020-18, Additional Relief for Taxpayers Affected by Ongoing Coronavirus Disease 2019 Pandemic, 2020-18 I.R.B. 742, 2020 WL 1819026 (April 9, 2020). Accordingly, we reinstated the appeal after *sua sponte* dismissing it for untimeliness.

rule applies only to jury trials is not persuasive because *Lind* itself applied that rule in an appeal arising from a bench trial. *See id.* at 1283.

Nor do we find persuasive the Provitolas' law-of-the-case argument. The order that the Provitolas claim limited the issues in the case listed multiple triable issues, not just the one they quote. Those issues included "whether the legal and professional services fees paid by petitioners were ordinary and necessary expenses." So even if we assume that this order established law of the case, the Tax Court acted within the order's scope when it concluded that the expenses were not "ordinary and necessary" because Viovision was not yet an active business.

## III.

Next, the Provitolas contend that the Tax Court erred by imposing a "product sale" requirement for a manufacturing business to exist beyond the start-up phase. They argue that Viovision was in the business of both manufacturing and marketing, and they assert that Viovision's manufacturing business was active during 2013 and 2014 because it was manufacturing product components that were "ultimately incorporated in the assembly and packaging runs in 2015."

We review the Tax Court's application of the tax code *de novo* and its findings of fact for clear error. *Campbell v. Comm'r of Internal Revenue*, 658 F.3d 1255, 1258 (11th Cir. 2011). An income-tax deduction is a matter of legislative grace, and

the taxpayer bears the burden of clearly showing the right to a claimed deduction. *INDOPCO, Inc. v. Comm'r of Internal Revenue*, 503 U.S. 79, 84 (1992).

Section 162 of the Internal Revenue Code allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). "The phrase 'trade or business' presupposes an existing trade or business." *Stanton v. Comm'r of Internal Revenue*, 399 F.2d 326, 329 (5th Cir. 1968).[2] So § 162(a) "does not allow current deductions for expenses incurred by a taxpayer prior to beginning business operations." *Sorrell v. Comm'r of Internal Revenue*, 882 F.2d 484, 486 (11th Cir. 1989) ("[P]rior to the business's beginning to operate as a going concern, the taxpayer is not engaged in carrying on any trade or business." (quotation marks omitted)).

Moreover, such "pre-opening" or "start-up" expenses are not "ordinary" expenses because they are considered "capital in nature, given that they spring from the taxpayer's efforts to create or acquire a capital asset." *Id.* at 488; *see Comm'r of Internal Revenue v. Tellier*, 383 U.S. 687, 689–90 (1966) ("The principal function of the term 'ordinary' in § 162(a) is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of

---

[2] This Court adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

the asset."). This understanding is reflected in 26 U.S.C. § 195, which provides that "no deduction shall be allowed for start-up expenditures," except through amortization once "the active trade or business begins." *See* 26 U.S.C. § 195(b).[3]

The determination of when a trade or business begins presents a question of fact requiring an examination of all the relevant facts. *Stanton*, 399 F.2d at 330. An active or existing trade or business is generally one that is "perform[ing] those activities for which it was organized," not simply taking steps in preparation to perform those activities. *Richmond Television Corp. v. United States*, 345 F.2d 901, 907 (4th Cir. 1965), *vacated on other grounds*, 382 U.S. 68 (1965); *see also Jackson v. Comm'r of Internal Revenue*, 864 F.2d 1521, 1526 (10th Cir. 1989) ("Taxpayers' activities in this case clearly did not rise to the level of a functioning business, and taxpayers did not perform the ultimate activity for which their business was organized—attempting to sell player/recorders.").

Here, the record amply supports the Tax Court's finding that the Provitolas were not yet carrying on a "trade or business" through Viovision in 2013 or 2014. *See* 26 U.S.C. § 162(a); *Sorrell*, 882 F.2d at 486; *Stanton*, 399 F.2d at 330. It is undisputed that the Provitolas created Viovision to profit from Anthony's invention

---

[3] A start-up expenditure includes any amount paid or incurred in (1) investigating the creation or acquisition of an active trade or business; (2) creating an active trade or business; or (3) engaging in activity for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business. 26 U.S.C. § 195(c)(1)(A).

by manufacturing and marketing a device to enhance the television viewing experience. Yet, according to Anthony's own testimony, Viovision was still engaged in the process of "creating the manufacturable item" in 2014 and did not produce its first units until 2015, after the tax years at issue. In addition, Viovision's website did not exist until 2015, and it had not sold any products as of the trial in 2019. Thus, whether viewed as a manufacturing business or a marketing or retail business, or both, Viovision had not begun "to operate as a going concern" in 2013 and 2014 because it had not yet manufactured or sold any of the devices, the purposes for which it was organized. *See Sorrell*, 882 F.2d at 486. While Anthony undertook substantial activity to prepare for the business of manufacturing and selling the device during that time, such expenses are not "ordinary" business expenses but rather in the nature of capital expenditures, which may be amortized once "the active trade or business begins." *See id.* at 486, 488; 26 U.S.C. § 195(b).

In sum, the Tax Court did not clearly err in finding that Viovision's expenses, as claimed on the Provitolas' 2013 and 2014 tax returns, were not deductible under § 162(a) as ordinary and necessary expenses paid or incurred in carrying on a trade or business. *See Campbell*, 658 F.3d at 1258. The Tax Court thus properly affirmed the Commissioner's disallowances. And because the Provitolas have not raised on appeal any independent arguments challenging the 26 U.S.C. § 6662(a) penalties, they have abandoned any such issues. *See Timson v. Sampson*, 518 F.3d 870, 874

10

(11th Cir. 2008) (stating that issues not briefed on appeal by *pro se* litigants are deemed abandoned).  We accordingly affirm the decisions of the Tax Court.

**AFFIRMED.**